GREGORY DIATCHENKO *vs.* DISTRICT ATTORNEY FOR THE
SUFFOLK DISTRICT & others.[1]

Suffolk. September 4, 2013. - December 24, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Sentence, Cruel and unusual punishment, Parole, Retroac-
tivity of judicial holding. *Due Process of Law,* Sentence, Parole. *Parole.
Retroactivity of Judicial Holding. Homicide. Practice, Criminal,* Sentence,
Parole, Retroactivity of judicial holding, Capital case.

Discussion of the United States Supreme Court's decision in *Miller* v. *Alabama,*
132 S. Ct. 2455 (2012), holding that mandatory life without parole for those
under the age of eighteen at the time of their crimes violates the prohibition
in the Eighth Amendment to the United States Constitution on "cruel and
unusual punishments," which decision was based on two strands of precedent
reflecting the Court's concern with proportionate punishment. [659-661]

This court concluded that the United States Supreme Court's decision in
*Miller* v. *Alabama,* 132 S. Ct. 2455 (2012), applies retroactively, because it
announced a new rule that mandatory life without parole for those under
the age of eighteen at the time of their crimes violates the prohibition in
the Eighth Amendment to the United States Constitution on "cruel and
unusual punishments"; further, this court concluded that the new constitu-
tional rule is substantive and, therefore, has retroactive application to cases
on collateral review. [661-667]

This court concluded that G. L. c. 265, § 2, which imposes a mandatory
sentence of life without the possibility of parole on individuals who are
under the age of eighteen when they commit the crime of murder in the
first degree violates both the prohibition in the Eighth Amendment to the
United States Constitution on "cruel and unusual punishments" and the
analogous prohibition in art. 26 of the Massachusetts Declaration of Rights
against "cruel or unusual punishments"; further, this court concluded that
the discretionary imposition of a sentence of life in prison without the pos-
sibility of parole on juveniles who are under the age of eighteen when they
commit murder in the first degree violates art. 26. [667-671] LENK, J.,
concurring, with whom GANTS and DUFFLY, JJ., joined.

In light of this court's conclusion that the imposition of a sentence of life
without the possibility of parole on juveniles who are under the age of
eighteen when they commit the crime of murder in the first degree is un-
constitutional, the sentence of imprisonment in the State prison for life
imposed on the criminal defendant, who was convicted of murder in the

[1]Chair of the Massachusetts Parole Board and Commissioner of Correction,
as nominal parties.

first degree for a stabbing that occurred when he was seventeen, remained in full force and effect, but the exception to parole eligibility in the fourth sentence of G. L. c. 265, § 2, did not apply to him; further, the related exception to parole eligibility set forth in G. L. c. 127, § 133A, was inapplicable to the defendant. [671-674]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 19, 2013.

The case was reported by *Botsford, J.*

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the petitioner.

*John P. Zanini,* Assistant District Attorney, for District Attorney for the Suffolk District.

*Amy L. Karangekis,* Assistant Attorney General, for chair of the Massachusetts Parole Board & another.

The following submitted briefs for amici curiae:

*Timothy J. Cruz,* District Attorney, & *Robert C. Thompson,* Assistant District Attorney, for District Attorney for the Plymouth District.

*Annie L. Owens,* of the District of Columbia, & *Emily R. Schulman* for Massachusetts Association of Criminal Defense Lawyers & others.

*David J. Apfel* & *Kunal Pasricha* for American Civil Liberties Union of Massachusetts & others.

*Kenneth J. Parsigian, Steven J. Pacini,* & *Amy E. Feinman* for Citizens for Juvenile Justice & others.

*John J. Barter* for Herby J. Caillot.

SPINA, J. On the evening of May 9, 1981, Gregory Diatchenko, who was seventeen years old at the time, stabbed Thomas Wharf nine times as Wharf sat in his red Cadillac automobile near Kenmore Square in Boston. Wharf was pronounced dead at 10:40 P.M. A Superior Court jury convicted Diatchenko of murder in the first degree on theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder (armed robbery). He was sentenced to a mandatory term of life imprisonment without the possibility of parole, pursuant to G. L. c. 265, § 2.[2] On direct

---

[2]General Laws c. 265, § 2, provides, in relevant part, that any person who

appeal, this court affirmed Diatchenko's conviction. See *Commonwealth* v. *Diatchenko*, 387 Mass. 718, 719 (1982). Among other claims, we rejected his contention that his sentence violated the Eighth and Fourteenth Amendments to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights.[3] *Id.* at 721-727. Diatchenko's conviction thus became final.[4]

Thirty years later, the United States Supreme Court decided *Miller* v. *Alabama*, 132 S. Ct. 2455 (2012) (*Miller*), in which it held that imposition of a mandatory sentence of life in prison without parole on individuals who were under the age of eighteen at the time they committed murder is contrary to the prohibition against "cruel and unusual punishments" in the Eighth Amendment. *Id.* at 2460. Consequently, on March 19, 2013, Diatchenko filed a petition in the county court pursuant to G. L. c. 211, § 3, and G. L. c. 231A, challenging the constitutionality of the sentencing scheme for murder in the first degree set forth in G. L. c. 265, § 2, as it applied to Diatchenko.[5] He also sought a declaration that art. 26 categorically bars the imposition of a

is guilty of murder in the first degree "shall be punished by imprisonment in the [S]tate prison for life. . . . No person shall be eligible for parole under [G. L. c. 127, § 133A,] while he is serving a life sentence for murder in the first degree . . . ."

[3]The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Similarly, the relevant portion of art. 26 of the Massachusetts Declaration of Rights states, in part: "No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments."

[4]Once a defendant's direct appeal to the Supreme Judicial Court has been decided, the defendant's conviction becomes final on the date the rescript issues to the lower court. See *Foxworth* v. *St. Amand*, 457 Mass. 200, 206 (2010). As defined in Mass. R. A. P. 1 (c), as amended, 454 Mass. 1601 (2009), the rescript is "the order, direction, or mandate of the appellate court disposing of the appeal."

[5]The Commonwealth contends that Diatchenko is not entitled to relief pursuant to G. L. c. 211, § 3, because there is no underlying case pending in a trial court, and Diatchenko has alternative avenues for challenging the constitutionality of his sentence. Given the constitutional significance of this case, coupled with the impact it will have on the administration of justice and the courts in light of the number of past, present, and future defendants whose sentences will be affected, the exercise of our broad powers of superintendence under G. L. c. 211, § 3, is appropriate. Moreover, "[w]here the single justice has, in [her] discretion, reserved and reported the case to the full court,

sentence of life without parole on offenders who were under the age of eighteen when they committed murder in the first degree. The single justice reserved and reported the entire matter to the full court without decision.[6] We now consider whether *Miller* is retroactive and, if so, the import of the rule announced in that case on the constitutionality of the sentencing scheme set forth in G. L. c. 265, § 2, and the appropriate remedy for Diatchenko and other similarly situated individuals to the extent that they currently are serving mandatory life sentences without the possibility of parole.[7] For the reasons that follow, we conclude that the Supreme Court's decision in *Miller* has retroactive application to cases on collateral review. We further conclude that the mandatory imposition of a sentence of life in prison without the possibility of parole on individuals who were under the age of eighteen when they committed the crime of murder in the first degree violates the prohibition against "cruel or unusual punishments" in art. 26 of the Massachusetts Declaration of Rights, and that the discretionary imposition of such a sentence on juvenile homicide offenders also violates art. 26 because it is an

we grant full appellate review of the issues reported." *Commonwealth* v. *Goodwin*, 458 Mass. 11, 14-15 (2010), quoting *Martin* v. *Commonwealth*, 451 Mass. 113, 119 (2008).

[6]We acknowledge the amicus briefs submitted in support of Diatchenko by Massachusetts Association of Criminal Defense Lawyers, Citizens for Juvenile Justice, the Child Advocate for the Commonwealth of Massachusetts, Reverend Kim Odom, Prisoners' Legal Services of Massachusetts, and Roca, Inc.; by American Civil Liberties Union of Massachusetts, Charles Hamilton Houston Institute for Race and Justice, Children's Law Center of Massachusetts, Citizens for Juvenile Justice, Juvenile Rights Advocacy Project at Boston College Law School, the Child Advocate for the Commonwealth of Massachusetts, Lawyers' Committee for Civil Rights and Economic Justice, Massachusetts Association of Court Appointed Attorneys, Massachusetts Bar Association, and seventeen Massachusetts law school professors; by Citizens for Juvenile Justice, Children's Law Center of Massachusetts, Children's League of Massachusetts, the Home for Little Wanderers, and the Child Advocate for the Commonwealth of Massachusetts; and by Herby J. Caillot. We also acknowledge the amicus brief submitted in support of the Commonwealth by the district attorney for the Plymouth district.

[7]According to the parties, there are approximately sixty-one other individuals in Massachusetts who are in the same position as Diatchenko. They are serving mandatory life sentences without the possibility of parole for convictions of murder in the first degree that predate *Miller* v. *Alabama*, 132 S. Ct. 2455 (2012) (*Miller*), and they were under the age of eighteen at the time they committed such crimes.

unconstitutionally disproportionate punishment when viewed in the context of the unique characteristics of juvenile offenders.[8]

1. Miller *analysis of Eighth Amendment landscape.* In *Miller,* 132 S. Ct. at 2460-2463, two fourteen year old offenders were convicted of murder, and each was sentenced to life in prison without the possibility of parole.[9] In both cases, the sentencing authority did not have any discretion to impose a different punishment that would take into consideration the unique characteristics of juvenile offenders. *Id.* The Supreme Court's holding that "mandatory life without parole for those under the age of [eighteen] at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments,' " *id.* at 2460, was based on "two strands of precedent reflecting [the Court's] concern with proportionate punishment." *Id.* at 2463.

The first strand of precedents "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.* See, e.g., *Graham* v. *Florida,* 560 U.S. 48, 75 (2010) (*Graham*) (Eighth Amendment prohibits imposition of life in prison without parole on juvenile offenders convicted of nonhomicide crimes who were under eighteen years of age when crimes were committed); *Kennedy* v. *Louisiana,* 554 U.S. 407, 421, 446-447 (2008) (Eighth Amendment prohibits imposition of death penalty for crime of rape of child where crime did not result, and was not intended to result, in death of victim); *Roper* v. *Simmons,* 543 U.S. 551, 568, 578 (2005) (*Roper*) (Eighth Amendment prohibits imposition of death penalty on juvenile offenders who were under eighteen years of age when crimes were committed); *Atkins* v. *Virginia,* 536 U.S. 304, 318-321 (2002) (Eighth Amendment prohibits execution of "mentally retarded" offenders). Of particular significance here, the decisions in *Graham* and *Roper* established that juvenile offenders are "constitu-

[8]When we use the term "juvenile" offenders here, we are referring to defendants who were under the age of eighteen at the time they committed murder in the first degree. See G. L. c. 119, § 72B, as amended through St. 2013, c. 84, § 24.

[9]The Supreme Court's opinion in *Miller, supra,* also decided a companion case, *Jackson* v. *Hobbs.* Miller's case was before the Court on direct review, *id.* at 2463, and Jackson's case was before the Court on collateral review. *Id.* at 2461, 2463.

tionally different from adults for purposes of sentencing" because they have "diminished culpability and greater prospects for reform," and, therefore, they do not deserve "the most severe punishments." *Miller*, 132 S. Ct. at 2464. See *Graham*, *supra* at 68; *Roper*, *supra* at 569-571.

Relying on science, social science, and common sense, the Supreme Court in *Miller* pointed to three significant characteristics differentiating juveniles from adult offenders for purposes of Eighth Amendment analysis. *Miller*, *supra*. First, children demonstrate a " 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking." *Id.*, quoting *Roper*, 543 U.S. at 569. Second, children " 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment'[;] and [they] lack the ability to extricate themselves from horrific, crime-producing settings." *Miller*, *supra*, quoting *Roper*, *supra*. Finally, "a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' " *Miller*, *supra*, quoting *Roper*, *supra* at 570. In essence, these distinctive characteristics of youth, which do not vary based on the nature of the crime committed, "diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, *supra* at 2465.

The second strand of precedents underpinning *Miller* "prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Miller*, 132 S. Ct. at 2463-2464. See, e.g., *Eddings* v. *Oklahoma*, 455 U.S. 104, 105, 110-112, 116 (1982) (Eighth Amendment prohibits imposition of death penalty absent individualized consideration of relevant mitigating evidence, including character and record of defendant and circumstances of offense); *Lockett* v. *Ohio*, 438 U.S. 586, 604-605, 608 (1978) (plurality opinion) (same); *Woodson* v. *North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion) (same). The Supreme Court recognized in *Miller*, based on its death penalty jurisprudence, that a defendant who is going to be subjected to a

State's harshest penalty must "have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors, so that the death penalty is reserved only for the most culpable defendants committing the most serious offenses." *Miller, supra* at 2467. In particular, "a sentencer [must] have the ability to consider the 'mitigating qualities of youth.' " *Id.*, quoting *Johnson* v. *Texas*, 509 U.S. 350, 367 (1993).

The confluence of these two strands of precedents led the Supreme Court to conclude in *Miller* that a sentencing scheme that punishes offenders who commit murder when they are under the age of eighteen by imposing a mandatory sentence of life in prison without the possibility of parole wholly precludes consideration of the unique characteristics of juvenile offenders and "disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id.* at 2468. Such a sentencing scheme violates the principle of proportionality and, therefore, the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 2469, 2475. The Supreme Court declined to consider whether the Eighth Amendment requires a "categorical bar" on the imposition of life without parole for juveniles who commit murder. *Id.* at 2469. Nonetheless, the Court said that, given the "diminished culpability" of juveniles and their "heightened capacity for change," those occasions when juveniles will be sentenced to the "harshest possible penalty will be uncommon." *Id.* In any event, an individualized hearing must be held prior to the imposition of such a sentence so that a judge or jury can have the opportunity to consider mitigating evidence that would counsel against a sentence of life in prison without the possibility of parole. *Id.* at 2469, 2475.

2. *Retroactivity of* Miller. The relevance of *Miller* to our consideration of the constitutionality of the Massachusetts sentencing scheme for murder in the first degree, G. L. c. 265, § 2, as applied to Diatchenko, turns on whether *Miller* is retroactive. More specifically, because the Supreme Court's decision in *Miller* was issued after Diatchenko's conviction had become final, we must decide whether its holding applies retroactively to cases on collateral review. The Court did not explicitly state whether *Miller* has retroactive application. Diatchenko argues that it does, and we agree.

"[A]t the heart of the retroactivity analysis" is "the determination whether a case announces a 'new' rule." *Commonwealth* v. *Sylvain, ante* 422, 428 (2013) (*Sylvain*). Acknowledging the inherent difficulty in making such a determination, a plurality of the Supreme Court in *Teague* v. *Lane,* 489 U.S. 288, 301 (1989) (*Teague*), stated that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final" (emphasis in original). See *Lambrix* v. *Singletary,* 520 U.S. 518, 527 (1997). Our desire for a clearly defined standard for assessing the retroactivity of a particular rule, coupled with "our concern that the finality of convictions not be unduly disturbed," *Sylvain, supra* at 433, led to our adoption of the *Teague* retroactivity framework in *Commonwealth* v. *Bray,* 407 Mass. 296, 300-301 (1990).[10] See *Commonwealth* v. *Clarke,* 460 Mass. 30, 34 n.7 (2011).

Prior to the Supreme Court's decision in *Miller* on June 25, 2012, judicial precedent did not compel a conclusion that it was unconstitutional to impose a mandatory sentence of life in prison without the possibility of parole on a juvenile homicide offender. To the contrary, the precedents on which the Court in *Miller* substantially relied were themselves decided long after Diatchenko's conviction became final, and they suggested the opposite result from the one ultimately reached in *Miller.* In *Roper,* 543 U.S. at 578, the Supreme Court held that "[t]he Eighth and

---

[10]In *Commonwealth* v. *Sylvain, ante* 422, 432-434 (2013) (*Sylvain*), we declined to adopt the Supreme Court's jurisprudential expansion of what qualifies as a "new" rule, articulated in decisions issued after *Teague* v. *Lane,* 489 U.S. 288 (1989) (*Teague*). We concluded that this expansion, to include rules that were not "apparent to all reasonable jurists" at the time a defendant's conviction became final, *Sylvain, supra* at 433, quoting *Lambrix* v. *Singletary,* 520 U.S. 518, 527-528 (1997), had become so broad that "decisions defining a constitutional safeguard rarely merit[ed] application on collateral review." *Sylvain, supra* at 433, quoting *Colwell* v. *State,* 118 Nev. 807, 818, cert. denied, 540 U.S. 981 (2003). See *Commonwealth* v. *Clarke,* 460 Mass. 30, 35 (2011). Therefore, in accordance with *Danforth* v. *Minnesota,* 552 U.S. 264, 282 (2008), we decided that Massachusetts would continue to adhere to the original framework articulated in *Teague, supra* at 301, that "a case announces a 'new' rule only when the result is 'not dictated by precedent.' " *Sylvain, supra* at 434, quoting *Teague, supra.*

Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of [eighteen] when their crimes were committed." By so holding, the Court affirmed the judgment of the Missouri Supreme Court, which had vacated the defendant's death sentence and imposed a sentence of life without parole. *Id.* at 559-560, 578-579. The result of the *Roper* decision was to leave intact a sentence of life without parole for a juvenile homicide offender, thereby implicitly endorsing the constitutionality of such a sentence. In *Graham*, 560 U.S. at 82, the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide," but it stated several times that its decision was limited to sentences of life without parole imposed on juveniles solely for *nonhomicide* offenses. *Id.* at 63, 74-75. Significantly, when discussing the sentencing of juveniles, the Court made a point of distinguishing between homicide and nonhomicide crimes, recognizing that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." *Id.* at 69, and cases cited. The implications of the Court's reasoning were that defendants who kill deserve the harshest penalties, and that imposition of a sentence of life without parole on a juvenile who commits homicide does not raise the same constitutional concerns as the imposition of that same sentence on a juvenile nonhomicide offender.

Not only did *Graham* and *Roper* not dictate the result announced in *Miller*, but the Supreme Court proceeded to analyze its jurisprudence in the context of evolving science pertaining to the development of the adolescent brain, which can have an impact on juvenile behavior in myriad ways. See *Miller*, 132 S. Ct. at 2464-2465. Given the distinctive attributes of youth, the Court also recognized the relevance of a wholly separate line of precedents, those requiring individualized assessment prior to the imposition of the death penalty, to which a sentence of life without parole when imposed on a juvenile was analogized. *Id.* at 2466-2467. The convergence of these distinct considerations resulted in the Supreme Court's decision in *Miller*. In our view, *Miller* broke new ground and did not merely apply an established constitutional standard to a novel set of facts. See *Sylvain*, 466

Mass. at 435 (concluding that *Padilla* v. *Kentucky*, 559 U.S. 356 [2010], did not announce new constitutional rule but, rather, applied established standard to new factual situation); *Clarke*, 460 Mass. at 43-44 (same). See also *Williams* v. *Taylor*, 529 U.S. 362, 390-391 (2000).

At the time Diatchenko's conviction became final, there was no suggestion in existing Federal or State law that the imposition of a mandatory sentence of life in prison without the possibility of parole on an offender who was under the age of eighteen at the time he committed murder was constitutionally suspect. We need look no further than our own decision affirming Diatchenko's conviction on direct appeal. See *Commonwealth* v. *Diatchenko*, 387 Mass. 718, 719 (1982). This court explicitly rejected his contention that the mandatory sentencing provision of G. L. c. 265, § 2, violated the Eighth and Fourteenth Amendments and art. 26 because it contravened modern standards of decency and because the punishment imposed was so disproportionate to the offense. *Id.* at 721-727 (pointing out that decisions in Massachusetts, other States, and Supreme Court had upheld prison sentences equal in severity to sentence imposed on Diatchenko). It was not until *Miller* was decided that the sentencing of juvenile homicide offenders fundamentally changed in a way that had not been dictated by then-existing precedent. Accordingly, we conclude that *Miller* announced a "new" constitutional rule.

With two limited exceptions that will be discussed shortly, a "new" constitutional rule of criminal law generally is *not* applicable on collateral review to those cases that became final before the new rule was announced. See *Teague*, 489 U.S. at 310. See also *Clarke*, 460 Mass. at 34; *Bray*, 407 Mass. at 300. Put another way, a "new" rule has retroactive application only with respect to those cases still pending on direct review. See *Sylvain, supra* at 433. See also *Griffith* v. *Kentucky*, 479 U.S. 314, 322 (1987), citing *Desist* v. *United States*, 394 U.S. 244, 258 (1969) (Harlan, J., dissenting) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"). Where a case announces a rule that is not considered to be new, it will be applied both on direct and collateral review. See

*Sylvain, supra* at 423-424, 428. See also *Whorton* v. *Bockting*, 549 U.S. 406, 416 (2007) ("Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review").

As mentioned, there are two exceptions to the general principle that a "new" constitutional rule does not apply retroactively to cases on collateral review. See *Teague*, 489 U.S. at 311. See also *Sylvain, supra* at 428 n.6. First, a decision that announces a "new" constitutional rule will have retroactive application where the rule is substantive. See *Schriro* v. *Summerlin*, 542 U.S. 348, 351 (2004). Such a rule "places a class of private conduct beyond the power of the State to proscribe," *Saffle* v. *Parks*, 494 U.S. 484, 494 (1990), citing *Teague, supra*, or addresses a constitutional determination "prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Saffle* v. *Parks, supra*, quoting *Penry* v. *Lynaugh*, 492 U.S. 302, 330 (1989), abrogated on other grounds by *Atkins* v. *Virginia*, 536 U.S. 304 (2002). See *Schriro* v. *Summerlin, supra* at 351-352. Such rules have retroactive application because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal,' " *Bousley* v. *United States*, 523 U.S. 614, 620 (1998), quoting *Davis* v. *United States*, 417 U.S. 333, 346 (1974), or "faces a punishment that the law cannot impose upon him." *Schriro* v. *Summerlin, supra* at 352.

Second, a "new" rule will apply retroactively if it requires the observance of procedures that are "implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 311, quoting *Mackey* v. *United States*, 401 U.S. 667, 693 (1971) (Harlan, J., concurring in part and dissenting in part). This second exception is reserved for "watershed rules of criminal procedure," *Teague, supra*, namely those "implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle* v. *Parks*, 494 U.S. at 495. It is narrowly limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague, supra* at 313. See *Schriro* v. *Summerlin*, 542 U.S. at 350, 352, 355-356, 358 (rule that alters range of permissible methods for determining whether defendant's conduct is

punishable by death constitutes new procedural rule, but does not implicate fundamental fairness and accuracy of criminal proceeding so as to be retroactive on collateral review).

Based on these standards, we conclude that the "new" constitutional rule announced in *Miller* is substantive and, therefore, has retroactive application to cases on collateral review, including Diatchenko's case.[11] The rule explicitly forecloses the imposition of a certain category of punishment — mandatory life in prison without the possibility of parole — on a specific class of defendants: those individuals under the age of eighteen when they commit the crime of murder. Its retroactive application ensures that juvenile homicide offenders do not face a punishment that our criminal law cannot constitutionally impose on them.[12] See *id.* at 352.

Our conclusion is supported by the fact that in *Miller*, 132 S. Ct. at 2469, 2475, the Supreme Court retroactively applied the rule that it was announcing in that case to the defendant in the companion case who was before the Court on collateral review. See note 9, *supra.* "[A] new rule announced by the Supreme Court does not become retroactive by subsequent decisions of other courts, but by the action taken by the Supreme Court in the case announcing the new rule." *State* v. *Ragland*, 836 N.W.2d 107, 114 (Iowa 2013), citing *Tyler* v. *Cain*, 533 U.S. 656, 663 (2001). Following the issuance of the decision in *Roper*, 543 U.S. at 578, the defendant in *Miller*'s companion case, Kuntrell Jackson, filed a petition for a writ of habeas corpus, arguing that a mandatory sentence of life in prison without parole for a fourteen year old offender who had been convicted of murder violated the Eighth Amendment. *Miller*,

---

[11]The "new" constitutional rule announced in *Miller* does not fall within the second exception to the general principle that "new" rules do not apply retroactively to cases on collateral review. The focus of the inquiry regarding the applicability of the second exception is the accuracy and fairness of the conviction. See *Teague*, 489 U.S. at 311-313. A constitutional violation that pertains to sentencing has nothing to do with the fairness and accuracy of the underlying conviction. Therefore, the *Miller* rule is not a "watershed rule[] of criminal procedure." *Id.* at 311.

[12]No consensus has developed as to whether *Miller* applies retroactively to cases on collateral review. For an overview of how several jurisdictions have analyzed this issue, see *State* v. *Ragland*, 836 N.W.2d 107, 113-115 (Iowa 2013).

*supra* at 2461. After holding that the imposition of such a sentence on a juvenile homicide offender was unconstitutional because it constituted "cruel and unusual punishment," the Supreme Court applied this "new" rule to Jackson's case. *Id.* at 2469, 2473-2475. As the Court stated in *Teague*, 489 U.S. at 300, "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated."

3. *Constitutionality of G. L. c. 265, § 2, in light of* Miller. Having determined that the "new" rule announced in *Miller* is retroactive, we now consider the import of that rule on the constitutionality of G. L. c. 265, § 2, as it pertains to Diatchenko's case. The statute provides, in relevant part, that any person who is guilty of murder in the first degree "*shall* be punished by imprisonment in the [S]tate prison for life. . . . No person shall be eligible for parole under [G. L. c. 127, § 133A,] while he is serving a life sentence for murder in the first degree . . ." (emphasis added). G. L. c. 265, § 2. By its clear and plain terms, the statute imposes a *mandatory* sentence of life in prison without the possibility of parole on individuals who are under the age of eighteen when they commit the crime of murder in the first degree. Pursuant to *Miller*, 132 S. Ct. at 2469, 2475, we conclude that this mandatory sentence violates both the Eighth Amendment prohibition against "cruel and unusual punishment[]" and the analogous provision of the Massachusetts Declaration of Rights set forth in art. 26. See note 3, *supra*.[13]

As discussed, *Miller* did not foreclose entirely the imposition of a sentence of life in prison without parole on juvenile homicide offenders, just the mandatory imposition of such a sentence. *Miller*, 132 S. Ct. at 2469, 2475. Acknowledging the expanding body of research in developmental psychology and neuroscience

[13]This court never has decided "whether the phrase 'inflict cruel or unusual punishments' in art. 26 has the same prohibitive sweep as the phrase 'nor cruel and unusual punishments inflicted' in the Eighth Amendment." *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523, 533 (1983). See *Commonwealth* v. *Diatchenko*, 387 Mass. 718, 722 n.2 (1982). Nonetheless, we have said that "the rights guaranteed under art. 26 are at least equally as broad as those guaranteed under the Eighth Amendment." *Michaud* v. *Sheriff of Essex County*, *supra* at 534. See *Good* v. *Commissioner of Correction*, 417 Mass. 329, 335 (1994).

showing fundamental differences between juvenile and adult brains, as well as the heightened capacity of juveniles for positive change and rehabilitation, the Supreme Court said in *Miller* that on those occasions when a State seeks to impose life in prison without parole on a juvenile homicide offender, there must be an individualized hearing to evaluate the unique characteristics of the offender and assess whether this punishment is appropriate in the circumstances. *Id.* at 2464-2465, 2469, 2475. Only after such an individualized hearing may a judge, in his or her discretion, impose a sentence of life in prison without the possibility of parole without running afoul of the Eighth Amendment. *Id.* at 2467-2469, 2475. Here, having concluded that the *mandatory* imposition of this sentence on juvenile homicide offenders violates their Federal and State constitutional rights, we consider whether the *discretionary* imposition of this sentence comports with art. 26.

This court has "the inherent authority 'to interpret [S]tate constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution.' " *Libertarian Ass'n of Mass.* v. *Secretary of the Commonwealth*, 462 Mass. 538, 558 (2012), quoting *Goodridge* v. *Department of Pub. Health*, 440 Mass. 309, 328 (2003). See *Danforth* v. *Minnesota*, 552 U.S. 264, 288 (2008), citing *Oregon* v. *Haas*, 420 U.S. 714, 719 (1975) (State "may grant its citizens broader protection than the Federal Constitution requires by enacting appropriate legislation or by judicial interpretation of its own Constitution"); *Arizona* v. *Evans*, 514 U.S. 1, 8 (1995) (same). We often afford criminal defendants greater protections under the Massachusetts Declaration of Rights than are available under corresponding provisions of the Federal Constitution. See *District Attorney for the Suffolk Dist.* v. *Watson*, 381 Mass. 648, 650, 665 (1980) (concluding that death penalty contravened prohibition against cruel or unusual punishment in art. 26, notwithstanding constitutionality under Eighth Amendment). See also, e.g., *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 855-860 (2000) (defendant's right under art. 12 of Massachusetts Declaration of Rights to be informed of attorney's efforts to render assistance broader than rights under Fifth and Sixth Amendments to United States

Constitution); *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 660-668 (1999) (privacy rights afforded drivers and occupants of motor vehicles during routine traffic stops broader under art. 14 of Massachusetts Declaration of Rights than under Fourth Amendment to United States Constitution); *Commonwealth* v. *Amirault*, 424 Mass. 618, 628-632 (1997) (confrontation rights greater under art. 12 than under Sixth Amendment to United States Constitution).

Central to the Eighth Amendment is the concept of proportionality, see *Graham*, 560 U.S. at 59, which flows from the fundamental " 'precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense." *Miller*, 132 S. Ct. at 2463, quoting *Roper*, 543 U.S. at 560. Similarly, with respect to art. 26, this court has recognized that "it is possible that imprisonment for a long term of years might be so disproportionate to the offense as to constitute cruel [or] unusual punishment." *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 496 (1981), and cases cited. "To reach the level of cruel [or] unusual, the punishment must be so disproportionate to the crime that it 'shocks the conscience and offends fundamental notions of human dignity.' " *Id.* at 497, quoting *Commonwealth* v. *Jackson*, 369 Mass. 904, 910 (1976). Analysis of disproportionality occurs "in light of contemporary standards of decency which mark the progress of society." *Good* v. *Commissioner of Correction*, 417 Mass. 329, 335 (1994), citing *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523, 533 (1983). See *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 435 (1982), quoting *District Attorney for the Suffolk Dist.* v. *Watson*, 381 Mass. at 661-662 ("Article 26, like the Eighth Amendment, bars punishments which are 'unacceptable under contemporary moral standards' "). In the present circumstances, the imposition of a sentence of life in prison without the possibility of parole for the commission of murder in the first degree by a juvenile under the age of eighteen is disproportionate not with respect to the offense itself, but with regard to the particular offender.

Given current scientific research on adolescent brain development,[14] and the myriad significant ways that this development impacts a juvenile's personality and behavior, a conclusive

---

[14]See, e.g., Steinberg, Should the Science of Adolescent Brain Development

showing of traits such as an "irretrievably depraved character,"
*Roper*, 543 U.S. at 570, can never be made, with integrity, by
the Commonwealth at an individualized hearing to determine
whether a sentence of life without parole should be imposed on
a juvenile homicide offender. See *Miller*, 132 S. Ct. at 2464.
Simply put, because the brain of a juvenile is not fully developed,
either structurally or functionally, by the age of eighteen, a
judge cannot find with confidence that a particular offender, at
that point in time, is irretrievably depraved. See *Graham*, 560
U.S. at 68. See also note 14, *supra*. Therefore, it follows that
the judge cannot ascertain, with any reasonable degree of
certainty, whether imposition of this most severe punishment is
warranted. As the Supreme Court recognized in *Miller*, *supra* at
2464, "children are constitutionally different from adults for
purposes of sentencing," irrespective of the specific crimes that
they have committed. See *id.* at 2465. They have "diminished
culpability and greater prospects for reform, . . . [and, as such,]
'they are less deserving of the most severe punishments.' " *Id.*
at 2464, quoting *Graham*, *supra*. See *Roper*, *supra* (unformed
nature of adolescent identity raises doubts about conclusion that
"even a heinous crime committed by a juvenile is evidence of
irretrievably depraved character"). When considered in the
context of the offender's age and the wholesale forfeiture of all
liberties, the imposition of a sentence of life without parole on a
juvenile homicide offender is strikingly similar, in many respects,
to the death penalty, which this court has determined is un-
constitutional under art. 26. See *District Attorney for the Suffolk
Dist.* v. *Watson*, 381 Mass. at 661-662. See also *Graham*, *supra*
at 69-70.[15]

The penological justifications for imposing life in prison with-

Inform Public Policy?, Issues in Science and Technology 67 (Spring 2012);
Steinberg, Adolescent Development and Juvenile Justice, 5 Annual Review of
Clinical Psychology 459 (2009); Steinberg & Scott, Less Guilty by Reason of
Adolescence: Developmental Immaturity, Diminished Responsibility, and the
Juvenile Death Penalty, 58 American Psychologist 1009 (December 2003).

[15]In *Graham* v. *Florida*, 560 U.S. 48, 69 (2010), quoting *Gregg* v. *Georgia*,
428 U.S. 153, 187 (1976) (opinion of Stewart, Powell, & Stevens, JJ.), the
Supreme Court pointed out that while "a death sentence is 'unique in its
severity and irrevocability,' . . . life without parole sentences share some
characteristics with death sentences that are shared by no other sentences." A
sentence of imprisonment until death "alters the offender's life by a forfeiture

out the possibility of parole — incapacitation, retribution, and deterrence — reflect the ideas that certain offenders should be imprisoned permanently because they have committed the most serious crimes, and they pose an ongoing and lasting danger to society. See *Graham*, 560 U.S. at 71. However, the distinctive attributes of juvenile offenders render such justifications suspect. See *Miller*, 132 S. Ct. at 2464-2466; *Graham, supra* at 71-73. More importantly, they cannot override the fundamental imperative of art. 26 that criminal punishment be proportionate to the offender and the offense. With current scientific evidence in mind, we conclude that the discretionary imposition of a sentence of life in prison without the possibility of parole on juveniles who are under the age of eighteen when they commit murder in the first degree violates the prohibition against "cruel or unusual punishment[]" in art. 26.[16] The unconstitutionality of this punishment arises not from the imposition of a sentence of life in prison, but from the absolute denial of any possibility of parole. Given the unique characteristics of juvenile offenders, they should be afforded, in appropriate circumstances, the opportunity to be considered for parole suitability.

4. *Remedy to address unconstitutionality of statutory provisions.* We are aware that "the Legislature has considerable

---

that is irrevocable." *Graham* v. *Florida, supra.* Such a sentence is "an especially harsh punishment for a juvenile," because he almost inevitably will serve "more years and a greater percentage of his life in prison than an adult offender." *Id.* at 70. The Supreme Court has viewed a sentence of life in prison without the possibility of parole as the "ultimate penalty for juveniles [that is] akin to the death penalty." *Miller*, 132 S. Ct. at 2466.

[16]In concluding that the imposition of a sentence of life in prison without the possibility of parole on juveniles under the age of eighteen violates the constitutional prohibition against "cruel or unusual punishment[]" in art. 26, we join a world community that has broadly condemned such punishment for juveniles. The United Nations Convention on the Rights of the Child, "ratified by every nation except the United States and Somalia, prohibits the imposition of life imprisonment without the possibility of release . . . for offences committed by persons below eighteen years of age" (quotations omitted). *Graham* v. *Florida*, 560 U.S. at 81, quoting United Nations Convention on the Rights of the Child, art. 37 (a), Nov. 20, 1989, 1577 U.N.T.S. 3. As John Adams recognized over 215 years ago, we belong to an international community that tinkers toward a more perfect government by learning from the successes and failures of our own structures and those of other nations. See J. Adams, Preface, A Defence of the Constitutions of Government of the United States of America (1797).

latitude to determine what conduct should be regarded as criminal and to prescribe penalties to vindicate the legitimate interests of society." *Commonwealth* v. *Alvarez*, 413 Mass. 224, 233 (1992), and cases cited. See *Cepulonis* v. *Commonwealth*, 384 Mass. at 497 (Legislature has broad discretion to determine punishment for particular offense). See also *Rummel* v. *Estelle*, 445 U.S. 263, 274 (1980) ("for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a [S]tate penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative"). Notwithstanding this broad discretion, enactments of the Legislature must comport with both the Federal and State Constitutions. See *Canton* v. *Bruno*, 361 Mass. 598, 606 (1972) (appellate court will give effect to enactment of Legislature "in so far as the State and Federal Constitutions permit"). It plainly is within the purview of the Legislature to treat juveniles who commit murder in the first degree more harshly than juveniles who commit other types of crimes, including murder in the second degree. However, a legislative enactment that imposes a sentence of life in prison without the possibility of parole on juvenile homicide offenders does not pass constitutional muster.

"When a court is compelled to pass upon the constitutionality of a statute and is obliged to declare part of it unconstitutional, the court, as far as possible, will hold the remainder to be constitutional and valid, if the parts are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part." *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 540 (1982), quoting *Opinion of the Justices*, 330 Mass. 713, 726 (1953). See G. L. c. 4, § 6, Eleventh ("The provisions of any statute shall be deemed severable, and if any part of any statute shall be adjudged unconstitutional or invalid, such judgment shall not affect other valid parts thereof"); *Peterson* v. *Commissioner of Revenue*, 444 Mass. 128, 137-138 (2005). When the Legislature enacted G. L. c. 265, § 2, it specifically provided that "[i]f any of the provisions of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this act which can be given effect without the

invalid provisions or applications, and to this end the provisions of this act are declared severable." St. 1982, c. 554, § 7. In light of our conclusion that the imposition of a sentence of life in prison without the possibility of parole on juvenile offenders who are under the age of eighteen when they commit the crime of murder in the first degree is unconstitutional, the language in the fourth sentence of G. L. c. 265, § 2, which sets forth the exception to parole eligibility, is invalid as applied to juvenile homicide offenders.[17] See note 2, *supra*. The remaining provisions of the statute have independent force and "can be given effect without the invalid provisions." *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 172 n.35 (1984), quoting St. 1982, c. 554, § 7.

With regard to a charge of murder under G. L. c. 265, § 1, "[t]he degree of murder shall be found by the jury." Here, a Superior Court jury convicted Diatchenko of murder in the first degree on theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder (armed robbery). The punishment for the commission of such a crime is "imprisonment in the [S]tate prison for life." G. L. c. 265, § 2. Therefore, Diatchenko's life sentence remains in full force and effect, but the statutory exception to parole eligibility no longer applies to him. See *Commonwealth* v. *Cassesso*, 368 Mass. 124, 125 (1975) (statute mandated sentence of life imprisonment after invalidation of death penalty).

Similarly, the related exception to parole eligibility set forth in G. L. c. 127, § 133A, is inapplicable to Diatchenko. In 1982, when he was sentenced to life in prison, this statute provided that "[e]very prisoner who is serving a sentence for life . . . except prisoners serving a life sentence for murder in the first degree, shall be eligible for parole . . . within sixty days before the expiration of fifteen years of such sentence . . . ." G. L. c. 127, § 133A, as amended through St. 1965, c. 766, § 1. Diatchenko now has served approximately thirty-one years of his life sentence. He is eligible to be considered for parole immediately and may apply to the Massachusetts parole board for

---

[17]The exception to parole eligibility set forth in the fourth sentence of G. L. c. 265, § 2, remains valid with respect to individuals who are eighteen years of age or older at the time they commit murder in the first degree.

a hearing that shall afford him a meaningful opportunity to obtain release. Contrary to Diatchenko's contention, he is not entitled to be resentenced given that he was not improperly sentenced in the first instance, but only was denied the chance to be considered for parole.

Our decision should not be construed to suggest that individuals who are under the age of eighteen when they commit murder in the first degree necessarily should be paroled once they have served a statutorily designated portion of their sentences. The severity of this particular crime cannot be minimized even if committed by a juvenile offender. By the same token, we have recognized that, given the unique characteristics of juvenile offenders that render them "constitutionally different from adults for purposes of sentencing," *Miller*, 132 S. Ct. at 2464, they should be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75. At the appropriate time, it is the purview of the Massachusetts parole board to evaluate the circumstances surrounding the commission of the crime, including the age of the offender, together with all relevant information pertaining to the offender's character and actions during the intervening years since conviction. By this process, a juvenile homicide offender will be afforded a meaningful opportunity to be considered for parole suitability.

5. *Conclusion.* The matter is remanded to the county court, where the single justice will enter a declaratory judgment consistent with this opinion, and will take such further action as is necessary and appropriate.[18]

*So ordered.*

___

[18]The Commonwealth contends that the Committee for Public Counsel Services (CPCS) should be disqualified from further representing Diatchenko in this action because such representation is not authorized by G. L. c. 211D. We disagree. General Laws c. 211D, § 5, provides that CPCS "shall establish, supervise and maintain a system for the appointment or assignment of counsel at any stage of a proceeding, either criminal or noncriminal in nature, provided, however, that the laws of the commonwealth or the rules of the supreme judicial court require that a person in such proceeding be represented by counsel; and, provided further, that such person is unable to obtain counsel by reason of his indigency." The heart of this case is the constitutional validity of Diatchenko's sentence for murder in the first degree. It is well established that

LENK, J. (concurring, with whom Gants and Duffly, JJ., join). I concur in the court's decision and write separately only to underscore the "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," *Graham* v. *Florida*, 560 U.S. 48, 75 (2010), that, in my view, today's decision contemplates. The court holds that all sentences of life without the possibility of parole for juvenile offenders violate art. 26 of the Massachusetts Declaration of Rights. *Ante* at 667, 670-671. Pivotal to this holding, as to the holding in *Miller* v. *Alabama*, 132 S. Ct. 2455, 2464 (2012), is the recognition that "children are constitutionally different from adults for purposes of sentencing." The factors that make this so, "among them, immaturity, impetuosity, and failure to appreciate risks and consequences," *id.* at 2468, render the possibility of parole a matter of central importance. Where decisions regarding parole suitability are not informed by an attention to "the distinctive attributes of youth [that] diminish the penological justifications for imposing the harshest sentences on juvenile offenders," considerations that would seem no less germane to determinations of parole suitability, the meaningful nature of the opportunity for release may be compromised. See *id.* at 2465.

a defendant has a right to counsel during sentencing. See *Commonwealth* v. *Wilcox*, 446 Mass. 61, 66 n.9 (2006); *Commonwealth* v. *Faulkner*, 418 Mass. 352, 360 (1994); *Osborne* v. *Commonwealth*, 378 Mass. 104, 114 (1979); *Williams* v. *Commonwealth*, 350 Mass. 732, 736 (1966). Further, the Commonwealth has not challenged Diatchenko's indigency. Given that Diatchenko originally was sentenced in 1981, the present proceeding is highly unusual, but we conclude that it is still part of the sentencing process. Accordingly, CPCS need not be disqualified from representing Diatchenko.