NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12394

COMMONWEALTH  vs.  BRANDON BAEZ.


Suffolk.     April 5, 2018. - August 23, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
                  & Kafker, JJ.


Firearms.  Delinquent Child.  Constitutional Law, Sentence,
     Cruel and unusual punishment.  Due Process of Law,
     Sentence.  Practice, Criminal, Sentence.



     Indictments found and returned in the Superior Court
Department on June 20, 2016.

     A question of law was reported by Christopher J. Muse, J.,
to the Appeals Court.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Robert F. Hennessy for the defendant.
     John P. Zanini, Assistant District Attorney (Stacey
Pichardo Corson, Assistant District Attorney, also present) for
the Commonwealth.


     CYPHER, J.  This case presents the question whether, in

light of Miller v. Alabama, 567 U.S. 460 (2012), juvenile

delinquency adjudications for violent offenses may serve as

predicate offenses for adults indicted under G. L. c. 269, § 10G, the armed career criminal act (ACCA).[1] We conclude that they may.

Background. At age eighteen, the defendant, Brandon Baez, was indicted for a violation of G. L. c. 269, § 10 (a), unlawful possession of a firearm.[2] If convicted, and if he had no qualifying convictions for sentence enhancement, he would "be punished by imprisonment in the state prison for not less than two and one-half years nor more than five years, or for not less than [eighteen] months nor more than two and one-half years in a jail or house of correction." G. L. c. 269, § 10 (a) (6).

The defendant had twice been adjudicated delinquent for crimes of violence as defined by the Legislature; therefore, the Commonwealth charged the defendant with violating § 10G.[3] The ACCA mandates enhanced sentencing for adults who violate G. L. c. 269, § 10 (a), (c), or (h), and have "been previously

---

[1] General Laws c. 269, § 10G, is sometimes referred to in our decisions and by the bar as the armed career criminal act (ACCA). We therefore refer to § 10G in this opinion as the ACCA.

[2] The defendant was also indicted for carrying a loaded firearm. G. L. c. 269, § 10 (n). That count is not before us.

[3] Both adjudications resulted from the defendant's actions at age fifteen. He was adjudicated delinquent by reason of armed assault to rob and assault and battery by means of a dangerous weapon and was again adjudicated delinquent by reason of assault by means of a dangerous weapon. The dangerous weapon in each adjudication was a knife.

convicted of a violent crime or of a serious drug offense."[4] G. L. c. 269, § 10G (a)-(c).  In other circumstances, we have determined that when the Legislature used the word "conviction" rather than adjudication, it meant to exclude juvenile delinquency adjudications.  See generally Commonwealth v. Connor C., 432 Mass. 635, 646 (2000) ("We adhere to our long-standing jurisprudence that an 'adjudication' that a child has violated a law generally is not a 'conviction' of a crime").  Here, the Legislature imported the definition of "violent crime" from G. L. c. 140, § 121, which includes "any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult."  See Commonwealth v. Anderson, 461 Mass. 616, 631, cert. denied, 568 U.S. 946 (2012); Commonwealth v. Furr, 58 Mass. App. Ct. 155, 157-158 (2003).

The ACCA creates a tiered system of punishment.  Those with one applicable conviction "shall be punished by imprisonment in the state prison for not less than three years nor more than [fifteen] years."  Those with two applicable convictions, such as the defendant, "shall be punished by imprisonment in the state prison for not less than ten years nor more than [fifteen]

---

[4] The Commonwealth is not alleging that the ACCA applies to the defendant because he was "previously convicted . . . of a serious drug offense."  We therefore do not decide whether the statute applies to juvenile adjudications for drug offenses.

years."  Those with three applicable convictions "shall be punished by imprisonment in the state prison for not less than [fifteen] years nor more than [twenty] years."  G. L. c. 269, § 10G (a)-(c).

While the defendant's current case was proceeding, a judge in the Superior Court raised sua sponte the issue whether using juvenile adjudications to enhance sentencing in the same manner as adult convictions violated due process rights[5] and protections under the Eighth Amendment to the United States Constitution. The judge invited the defendant to file a motion to dismiss on these grounds and reported the following question to the Appeals Court:  "Whether in light of Miller v. Alabama, [567 U.S. 460 (2012)], a juvenile adjudication may be used as a predicate offense for enhanced penalties under G. L. c. 269, § 10G."  We subsequently allowed the defendant's application for direct appellate review.

Discussion.  The Eighth Amendment's prohibition against cruel and unusual punishments and art. 26's comparable ban[6] include protections from excessive and disproportionate sanctions.  See Roper v. Simmons, 543 U.S. 551, 560 (2005);

---

[5] Although the judge mentioned due process concerns in his discussion with counsel, he did not raise that issue in the certified question, so we therefore do not address it.

[6] Article 26 prohibits the infliction of "cruel or unusual punishments."

Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 671 (2013), S.C., 471 Mass. 12 (2015).  A punishment is unconstitutional if it is so disproportionate that it "shocks the conscience" (citation omitted).  Diatchenko, supra at 669. Proportionality concerns are especially acute when evaluating punishments for juveniles because "children are constitutionally different from adults for purposes of sentencing."  Miller, 567 U.S. at 471.

In Miller, 567 U.S. at 479, the United States Supreme Court held that the Eighth Amendment prohibits mandatory sentences of life without the possibility of parole for juvenile offenders convicted of murder.  We applied Miller's holding in Diatchenko, 466 Mass. at 671, and "conclude[d] that the discretionary imposition of a sentence of life in prison without the possibility of parole on juveniles who are under the age of eighteen when they commit murder in the first degree violates the prohibition against 'cruel or unusual punishment[]' in art. 26."  Miller, Diatchenko, and their progeny are controlling when evaluating the constitutionality of juvenile sentencing, but merely inform our understanding of the proportionality of adult punishment.

"The essence of proportionality is that 'punishment for crime should be graduated and proportioned to both the offender and the offense.'"  Commonwealth v. Perez, 477 Mass. 677, 683

(2017). We reached our conclusion in Diatchenko, in part, by considering the "unique characteristics of juvenile offenders."[7] Diatchenko, 466 Mass. at 671. Here, however, those characteristics are not relevant[8] because the defendant is an adult. If convicted, he would not be punished for his juvenile activity. He would be punished for violating the law as an adult while having two applicable juvenile adjudications on his record.

Without consideration of a juvenile offender's "diminished culpability," Miller, 567 U.S. at 471, the analysis of the proportionality of the punishment to the offense is

---

[7] "Relying on science, social science, and common sense, the Supreme Court in Miller pointed to three significant characteristics differentiating juveniles from adult offenders for purposes of Eighth Amendment analysis. First, children demonstrate a '"lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk-taking.' Second, children '"are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment"[;] and [they] lack the ability to extricate themselves from horrific, crime-producing settings.' Finally, 'a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be evidence of irretrievabl[e] deprav[ity].'" (Citations omitted.) Diatchenko, 466 Mass. at 660, quoting Miller, 567 U.S. at 471.

[8] Even though these characteristics are not relevant to the constitutional analysis, if the defendant were to be convicted, the circumstances surrounding his underlying juvenile adjudications would be relevant to the judge's determination of what sentence to impose, as in any sentencing decision.

straightforward.[9]  The Commonwealth argues that § 10G's

sentencing scheme considers "the fact that [the defendant] has

not been rehabilitated."  The Commonwealth further notes,

"[m]ore severe sentences are justified by recidivism."  Indeed,

we have said as much when interpreting the ACCA.  See

Commonwealth v. Resende, 474 Mass. 455, 468-469 (2016) (best

interpretation of ACCA is one that "reflects and implements the

principle that penal discipline can have [or should have] a

reforming influence on an offender, with enhanced consequences

if prior convictions and sentences do not have such an effect").

"Recidivism has long been recognized as a legitimate basis for

increased punishment."  Ewing v. California, 538 U.S. 11, 25

(2003).  Specifically, the Commonwealth contends that the

purpose of the ACCA's enhanced sentencing scheme is to achieve

the penological goals of deterrence and incapacitation.  Each is

a justifiable objective of incarceration under the Eighth

Amendment and art. 26.  "[A] second or subsequent offense is

often regarded as more serious because it portends greater

---

[9] Although not binding on our interpretation of art. 26's protections or the constitutionality of G. L. c. 269, § 10G, Federal courts have addressed a similar question and held that the use of juvenile adjudications to enhance sentences under the Federal armed career criminal act, 18 U.S.C. § 924(e), does not violate the Eighth Amendment.  See United States v. Orona, 724 F.3d 1297, 1309-1310 (10th Cir.), cert. denied, 571 U.S. 1034 (2013); United States v. Mason, 435 Fed. Appx. 726, 730-731 (10th Cir. 2011); United States v. Jones, 332 F.3d 688, 696 (3d Cir. 2003), cert. denied, 540 U.S. 1150 (2004).

future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation."  United States v. Rodriquez, 553 U.S. 377, 385 (2008).  The potential punishment is therefore constitutionally proportionate to the offender and the offense.[10]

We therefore answer "yes" to the reported question, holding that qualifying juvenile adjudications may be used as a predicate offense for enhanced penalties under G. L. c. 269, § 10G.

So ordered.

---

[10] When evaluating Eighth Amendment and art. 26 claims, we also compare the challenged punishment with penalties imposed for more serious crimes within the Commonwealth, and assess whether the challenged punishment is comparable to penalties imposed for the same offense in other jurisdictions. Commonwealth v. Perez, 477 Mass. 677, 684 (2017).  However, the reported question asks about the application of Miller, which is relevant only to the nature of the offender.  To opine further would be to analyze unnecessarily the ACCA's constitutionality. See Commonwealth v. Vega, 449 Mass. 227, 234 (2007).

GANTS, C.J. (concurring, with whom Lenk and Budd, JJ., join).  I agree with the court that it is not unconstitutional to use the adult defendant's two juvenile adjudications for separate "violent crime[s]," as defined in G. L. c. 140, § 121, as predicate offenses for enhanced sentences under G. L. c. 269, § 10G (b).  I write separately to encourage the Legislature to consider the wisdom and fairness of the mandatory minimum aspect of those enhanced sentences, especially where the predicate offenses were committed when the defendant was a juvenile.

First, although the court here, as in other cases,[1] refers to § 10G as "the armed career criminal act" or as applying to "armed career criminals," the statute does not contain these words, and the Legislature never gave the statute that name.  See St. 1998, c. 180, § 71.  And that is for good reason, because many, perhaps most, defendants given enhanced sentences under the provisions of § 10G cannot reasonably be characterized as armed career criminals.  "The term, 'armed career criminal,' derives from the Federal Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (2006), which imposes a mandatory minimum sentence of fifteen years for those convicted of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g) (2006) who have three prior convictions of a 'violent felony' or a

---

[1] See, e.g., Commonwealth v. Johnson, 461 Mass. 44, 45 (2011); Commonwealth v. Furr, 454 Mass. 101, 104 (2009).

'serious drug offense.'" Commonwealth v. Anderson, 461 Mass. 616, 626 n.10, cert. denied, 568 U.S. 946 (2012). But under § 10G, a single prior conviction of a "violent crime" or of a "serious drug offense" requires the imposition of a mandatory minimum sentence of no less than three years for anyone convicted of a crime under G. L. c. 269, § 10 (a), (c), or (h) -- provisions which include the offenses of carrying a firearm without a license and the illegal transfer of a firearm or ammunition. See G. L. c. 269, § 10G (a). Two such prior convictions, as in this case, require the imposition of a mandatory minimum sentence of no less than ten years. See G. L. c. 269, § 10G (b). And, as illustrated by this case, the prior "violent crime" or "violent crime[s]" may have been committed when the defendant was a juvenile -- here, the defendant was only fifteen years old when he committed his two predicate offenses.

The Legislature this year passed landmark criminal justice reform legislation that has begun the process of revisiting the wisdom and fairness of mandatory minimum sentences for certain offenses. See St. 2018, c. 69 (eliminating mandatory minimum sentences for many low-level, nonviolent drug offenses). As that process continues, and as the Legislature examines the wisdom and fairness of other mandatory minimum sentences (including the length of those mandatory minimum sentences), it

is important to recognize that many, perhaps most, of the defendants given mandatory minimum sentences as required by § 10G are not reasonably characterized as armed career criminals, especially where their predicate crimes were committed when they were juveniles.