NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12251


COMMONWEALTH  vs.  FERNANDO PEREZ.



Hampden.     April 3, 2017. - August 25, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd, &
Cypher, JJ.[1]


Constitutional Law, Sentence.  Due Process of Law, Sentence.
    Practice, Criminal, Sentence.




Indictments found and returned in the Superior Court
Department on February 16 and March 2, 2001.

Following review by the Appeals Court, 62 Mass. App. Ct.
912 (2004) and 67 Mass. App. Ct. 1116 (2006), a motion for
resentencing, filed on March 7, 2016, was considered by Daniel
A. Ford, J., and a motion for reconsideration was considered by
him.

The Supreme Judicial Court granted an application for
direct appellate review.


Elizabeth Caddick for the defendant.
Elizabeth Dunphy Farris, Assistant District Attorney
(Katherine E. McMahon, Assistant District Attorney, also
present) for the Commonwealth.
Merritt Schnipper, for Committee for Public Counsel
Services, amicus curiae, submitted a brief.

---

[1] Justice Hines participated in the deliberation on this
case and authored this opinion prior to her retirement.

HINES, J.  In the early morning hours of December 23, 2000, the juvenile defendant, Fernando Perez, who was then seventeen years of age, embarked on a crime spree in downtown Springfield. Accompanied by his adult uncle and armed with a handgun, the defendant committed two robberies, all within a span of thirty minutes.  While attempting a third robbery, he shot the intended victim, a plain-clothed Springfield police officer.  In November, 2001, a Superior Court jury convicted the defendant of armed robbery, armed assault with intent to rob, assault and battery by means of a dangerous weapon, and related firearms offenses.  The judge sentenced the defendant to multiple concurrent and consecutive terms, resulting in an aggregate sentence of thirty-two and one-half years,[2] with parole eligibility after twenty-seven and one-half years.

---

[2] The judge dismissed certain indictments, and on the remaining indictments, he imposed the following sentences.  On the first set of indictments, the judge sentenced the defendant as follows:  armed robbery (count 1), from five to seven and one-half years in State prison; armed robbery (count 3), from five years to five years and one day in State prison, to run from and after the sentence for count 1; armed robbery (count 5), ten years' probation to run from and after the sentence on count 4 in the second set of indictments; and unlawful possession of a firearm (count 7), two and one-half years in the house of correction, concurrent with the sentence for count 3.

On the second set of indictments, the judge sentenced the defendant as follows:  armed assault with the intent to rob (count 2), seven and one-half to ten years in State prison, to run from and after the sentence on count 3 in the first set of

In 2015, after our decision in Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655 (2013) (Diatchenko I), S.C., 471 Mass. 12 (2015), the defendant filed a motion for resentencing under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), arguing that the aggregate sentence imposed violated the prohibition on cruel and unusual punishment under the Eighth Amendment to the United States Constitution, and the cognate provision of art. 26 of the Massachusetts Declaration of Rights, by requiring him to serve twelve and one-half years longer before parole eligibility than a juvenile defendant convicted of murder.  He argued also that the sentence violated his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights and that, as a consequence, he was entitled to be resentenced to a term of years allowing parole eligibility on the same terms as a juvenile convicted of murder.  A Superior Court judge denied the motion, and the

---

indictments; assault and battery by means of a dangerous weapon (count 4), from nine years and 364 days to ten years in State prison, to run from and after the sentence for count 2; unlawful possession of a firearm (count 5), two and one-half years in the house of correction, concurrent with the sentence for count 7 of the first set of indictments; and unlawful discharge of a firearm (count 6), one day in the house of correction, concurrent with the sentence for count 5.

defendant appealed.  We granted the defendant's application for direct appellate review.[3]

On appeal, the defendant relies primarily on Roper v. Simmons, 543 U.S. 551, 578 (2005) (invalidating death penalty for juveniles), and its progeny[4] to support his claim that the aggregate sentence violates the proscription against cruel and unusual punishment under the Eighth Amendment and art. 26.  We decline the invitation to decide the issue on Eighth Amendment grounds, especially where the United States Supreme Court has not interpreted the Eighth Amendment as broadly as urged by the defendant.  Instead, we resolve the issue under art. 26, which we have interpreted more broadly than the Supreme Court has interpreted the Eighth Amendment.[5]  We conclude that where a juvenile is sentenced for a nonmurder offense or offenses and the aggregate time to be served prior to parole eligibility exceeds that applicable to a juvenile convicted of murder, the sentence cannot be reconciled with art. 26 unless, after a

---

[3] We acknowledge the amicus brief submitted by the Youth Advocacy Division of the Committee for Public Counsel Services.

[4] See Graham v. Florida, 560 U.S. 48, 75 (2010) (prohibiting life sentence without possibility of parole for juveniles convicted of nonhomicide offenses); and Miller v. Alabama, 567 U.S. 460, 465 (2012) (prohibiting mandatory life sentence without parole for juveniles convicted of murder).

[5] See Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 668 (2013) (Diatchenko I), S.C., 471 Mass. 12 (2015).

hearing on the factors articulated in Miller v. Alabama, 567 U.S. 460, 477-478 (2012) (Miller hearing), the judge makes a finding that the circumstances warrant treating the juvenile more harshly for parole purposes than a juvenile convicted of murder. Accordingly, we remand the matter to the Superior Court for a Miller hearing to determine whether the sentence comports with the requirements of art. 26. If not, then the defendant must be resentenced.

Background. 1. Facts. We recite the facts the jury could have found. On December 23, 2000, around 1 A.M., the defendant, then aged seventeen, committed two robberies and attempted a third. The three crimes occurred within thirty minutes of each other and within a several-block radius of downtown Springfield. The defendant was armed with a handgun, and his uncle, Tito Abrante, shuttled him from crime to crime.[6] The defendant first robbed a married couple at a train station and then robbed a man walking on Main Street. In the third incident, he approached Carlo D'Amato, an off-duty detective with the Springfield police department. Detective D'Amato said, "What's up?" to which the defendant replied, "I'm going to rob you . . . ." In response, Detective D'Amato said, "I don't think so. You should really

---

[6] Tito Abrante has a criminal history and, at the time, had been recently released from prison. He was charged with crimes related to these events, but was tried separately from the defendant.

think about this.  I'm a Springfield police officer and you should think about what you're doing."  As Detective D'Amato reached for his badge, the defendant shot him; the defendant continued to fire the weapon as he retreated from the scene. Detective D'Amato suffered serious injuries that required multiple surgeries.  On January 30, 2001, the police arrested the defendant in Scranton, Pennsylvania.  In statements to Scranton and Springfield police, the defendant admitted to shooting Detective D'Amato but claimed Abrante committed the other robberies.

2.  Sentencing.  Prior to sentencing, the trial judge ordered a G. L. c. 123, § 15 (e), evaluation in aid of sentencing, which was performed by Dr. Michael Sherry, a designated forensic psychologist.  In addition, a Superior Court probation officer in Hampden County, Laura Periera, prepared a presentence investigation report at the court's direction.  The judge previously had received and reviewed two reports from Dr. Pamela Dieter-Sands, a licensed psychologist and the defendant's expert witness.[7]  In her report, Dieter-Sands detailed the defendant's upbringing, how he lived under the extreme stress of his father's violence, and the vacuum that was left when an uncle who had nurtured and supported the defendant was murdered

---

[7] Dr. Pamela Dieter-Sands testified at trial regarding the defendant's mental state at the time he committed his offense.

in the spring of 2000.  The defendant filled the void left by this "loving father figure" with Abrante, whom he first met about one month after his uncle's death.  Periera reported that "this defendant believed that if he did not follow through with [Abrante's] orders, he would be subjected to bodily harm."

The Commonwealth sought concurrent life sentences on two of the defendant's armed robbery convictions, and term-of-years sentences totaling twenty to thirty years on the remaining felony convictions.  The defendant requested a sentence of ten years in State prison and urged the judge to consider the defendant's evaluations and his "horrible upbringing."  Before pronouncing sentence, the trial judge stated, "I recognize . . . that at the time of these offenses [the defendant] was only [seventeen] years old.  And young men of the age of [seventeen] frequently do not have the maturity to make good judgments.  But the law makes them responsible for their acts as adults, nonetheless."[8]  The judge sentenced the defendant to an aggregate term of thirty-two and one-half years imprisonment, resulting in parole eligibility after twenty-seven and one-half years.

---

[8] At the time of the conviction in 2001, the age threshold for a juvenile offender was seventeen years of age.  However, in 2013, the Legislature amended various provisions of G. L. c. 119, including § 72, which raised the age threshold from seventeen to eighteen years of age.  See G. L. c. 119, § 72, as amended through St. 2013, c. 84, §§ 21-22A (effective Sept. 18, 2013).  See also Commonwealth v. Mogelinski, 466 Mass. 627, 630-631 (2013).

3.  Posttrial proceedings.  The defendant appealed from his sentences to the appellate division of the Superior Court, which dismissed the appeal.  On February 15, 2002, the defendant filed identical motions to revise and revoke his sentences on the grounds of "basic fairness and justice, and the [d]efendant's personal circumstances and background," pursuant to Mass. R. Crim. P. 29, 378 Mass. 899 (1979).  On January 3, 2006, the trial judge denied the motions.

On October 25, 2004, the Appeals Court affirmed the convictions.  Commonwealth v. Perez, 62 Mass. App. Ct. 912, 914 (2004).  On December 27, 2005, the defendant filed a motion for a new trial, pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), on the ground of newly discovered evidence.  The trial judge denied the motion without a hearing, and the Appeals Court affirmed the denial.  Commonwealth v. Perez, 67 Mass. App. Ct. 1116 (2006) (unpublished opinion).

Thereafter, on March 7, 2016, the defendant filed a motion for a resentencing hearing pursuant to Mass. R. Crim. P. 30 (a), relying on our decision in Diatchenko I.  The motion judge[9] denied the motion, concluding "that a sentence providing for parole eligibility after [twenty-seven and one-half] years is not the functional equivalent of a life sentence without parole,

_____

[9] Because the trial judge had retired, the motion was heard by the same judge who had presided over Abrante's trial.

and therefore that the sentence imposed in this case was not constitutionally infirm."  On November 15, 2016, the judge denied the defendant's motion to reconsider, and the defendant filed an appeal in the Appeals Court.  On January 18, 2017, this court granted the defendant's application for direct appellate review.

Discussion.  1.  Standard of review.  We review the denial of a motion brought under Mass. R. Crim. P. 30 (a) for an abuse of discretion.  Commonwealth v. Wright, 469 Mass. 447, 461 (2014).  Under that standard, the issue is whether the judge's decision resulted from "'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

2.  Constitutionality of the sentence.  The Commonwealth advances a litany of arguments against the defendant's right to a review of the sentence, none of which is persuasive.  We agree that a judge has broad discretion in sentencing and that "[i]t is not within the power of this court to review an otherwise lawful sentence . . . [where] [t]his authority is delegated to the [a]ppellate [d]ivision of the Superior Court under G. L. c. 278, §§ 28A-28C."  Commonwealth v. Sanchez, 405 Mass. 369, 379 n.7 (1989).  Nonetheless, we have the power to review a

sentence to determine whether it is unconstitutional, and we exercise that power when, as here, it is appropriate to do so.

The defendant contends that his aggregate sentence -- which requires him to serve twenty-seven and one-half years before he is eligible for parole -- violates art. 26, because juveniles convicted of the more serious crime of murder at the time of his offenses were eligible for parole after fifteen years. The crux of his argument is that our decision in Diatchenko I[10] created a presumptive ceiling on parole eligibility for crimes less serious than murder, and that a sentence that treats him more harshly than a juvenile convicted of murder therefore violates the principle of proportionality inherent in art. 26.

We begin by outlining the parameters of the constitutional prohibition against cruel and unusual punishment. In Diatchenko I, 466 Mass. at 667, we interpreted art. 26 more broadly than the United States Supreme Court has interpreted the Eighth

---

[10] In Diatchenko I, 466 Mass. at 667, we declared unconstitutional G. L. c. 265, § 2, to the extent that it mandated a sentence of life in prison without the possibility of parole for a juvenile convicted of murder in the first degree. We also determined that G. L. c. 127, § 133A, barring parole eligibility for defendants convicted of murder in the first degree, was inapplicable to juveniles. Id. at 673. Thus, under Diatchenko I, a juvenile sentenced for murder in 2002 would be eligible for parole after fifteen years. In this case, we analogize the juvenile defendant's eligibility for parole to a juvenile defendant convicted of murder in 2002.

Amendment.[11]  See Miller, 567 U.S. at 479 (mandatory sentence of life in prison without parole for juvenile offenders violates Eighth Amendment; individualized sentence required).  Based on the science undergirding the Supreme Court's determination that "children are constitutionally different from adults for purposes of sentencing," id. at 471, we held that a life sentence without the possibility of parole violates art. 26, regardless of whether such a sentence is mandatory or imposed in the sentencing judge's discretion.  Diatchenko I, supra at 671.  The point of our departure from the Eighth Amendment jurisprudence was our determination that, under art. 26, the "unique characteristics of juvenile offenders" should weigh more heavily in the proportionality calculus than the United States Supreme Court required under the Eighth Amendment.  Id.  The touchstone of art. 26's proscription against cruel or unusual

---

[11] Under the United States Supreme Court's Eighth Amendment juvenile sentencing jurisprudence, an offender's status as a juvenile places only narrow limitations on the range of permissible sentences.  For example, although in Roper v. Simmons, 543 U.S. 551, 578 (2005), the Supreme Court held that the Eighth Amendment prohibited the death penalty for juveniles, the Court has not eliminated the possibility that a juvenile may be sentenced to imprisonment for life.  Miller, 567 U.S. at 489, prohibits only a mandatory sentence of life without the possibility of parole.  With respect to juveniles convicted of nonhomicide offenses, the Eighth Amendment has not been construed to impose a temporal limitation on the sentence that may be imposed.  Graham, 560 U.S. at 75.  Rather, taking into account the distinctive attributes of offenders who are juveniles at the time of the crime and the nature of the offense, the Eighth Amendment requires only a "meaningful opportunity" for, not a right to, parole.  Id.

punishment, however, remains proportionality. See id. at 669, citing Graham v. Florida, 560 U.S. 48, 59 (2010). The essence of proportionality is that "punishment for crime should be graduated and proportioned to both the offender and the offense" (citation omitted). Miller, supra at 469. Our specific inquiry here is whether the requirement of proportionality bars the imposition, on a juvenile defendant, of consecutive sentences for nonmurder offenses with a resulting parole eligibility date that exceeds that applicable to juveniles convicted of murder.

Although we have not been called upon to decide proportionality in this nonmurder context for juvenile defendants, we have considered proportionality as it pertains to adult defendants. See Cepulonis v. Commonwealth, 384 Mass. 495, 496 (1981) (challenging constitutionality of sentence of forty years for possession of sawed-off shotgun).[12] We followed in that case "a tripartite analysis to determine whether a defendant has met his burden" to establish a disproportionality of constitutional dimensions. Id. at 497, citing Commonwealth v. Jackson, 369 Mass. 904, 910 (1976).

> "The first prong of the disproportionality test
> requires inquiry into the 'nature of the offense and the

---

[12] In Cepulonis v. Commonwealth, 384 Mass. 495, 497-499 (1981), we held that the defendant's sentence of from forty to fifty years in State prison for possession of a machine gun, in violation of G. L. c. 269, § 10 (c), was not so disproportionate as to constitute cruel and unusual punishment in violation of the Eighth Amendment and art. 26.

> offender in light of the degree of harm to society.' . . .
> The second prong of the disproportionality analysis
> involves a comparison between the sentence imposed here and
> punishments prescribed for the commission of more serious
> crimes in the Commonwealth. . . . The final prong this
> court examines in the disproportionality analysis is a
> comparison of the challenged penalty with the penalties
> prescribed for the same offense in other jurisdictions."

Cepulonis, supra at 497-498. That tripartite analysis,

supplemented with the greater weight given to a juvenile

defendant's age, provides a useful framework for our

consideration of this juvenile defendant's challenge to the

constitutionality of his sentence. See Diatchenko I, 466 Mass.

at 669.

We examine first "the nature of the offense and the

offender in light of the degree of harm to society" (emphasis

supplied). Jackson, 369 Mass. at 910. With respect to the

first part, we do not discount the severity of the defendant's

multiple offenses -- among other crimes, he shot a police

officer during an attempted armed robbery, after having

committed two other armed robberies only minutes earlier. The

evidence established that the police officer suffered serious

injuries necessitating multiple surgeries. In the abstract --

i.e., without considering the offender -- the nature of the

multiple offenses, and the "degree of the harm to society," id.,

was such that a judge in the exercise of discretion might be

warranted in imposing consecutive sentences for the crimes,

aggregating to a sentence of thirty-two and one-half years with parole eligibility after twenty-seven and one-half years. Disproportionality is not, however, an abstract inquiry. The first prong of the disproportionality test also requires consideration of the particular offender. In Diatchenko I, 466 Mass. at 670, quoting Miller, 567 U.S. at 471, we reasoned that the unique characteristics of juvenile offenders, including their "diminished culpability and greater prospects for reform," made imposition of a life sentence without parole eligibility unconstitutional.[13] Because of those characteristics, imposition of an aggregate sentence of thirty-two and one-half years -- with parole eligibility exceeding that available to a juvenile defendant convicted of murder -- while perhaps within the range of a judge's discretion, may satisfy the first prong of the disproportionality test only if the factors described in Miller, supra at 477-478, are considered by the sentencing judge.

We come to a similar conclusion under the second prong of the proportionality calculus. Under that prong, we consider the disparity "between the sentence imposed [on the juvenile] and

---

[13] The juvenile defendant was sentenced in 2002. Although, as the dissenting opinion describes, the sentencing judge "considered the factors relating to the defendant's age, competency, culpability, background, and familial influence," post at    , the judge did not have the benefit of "current scientific research on adolescent brain development, and the myriad significant ways that this development impacts a juvenile's personality and behavior" (footnote omitted). Diatchenko I, 466 Mass. at 669.

punishments prescribed for the commission of more serious crimes in the Commonwealth." Cepulonis, 384 Mass. at 498. On its face, the aggregate sentence imposed on this juvenile defendant, albeit for serious crimes, is more severe -- at least as to parole eligibility -- than a sentence that could be imposed on a juvenile convicted of murder, the most serious criminal offense under our law.[14] A facial disproportionality of this magnitude in the punishment for nonmurder offenses is presumptively beyond that which can be tolerated by art. 26. In this regard, we are persuaded by the United States Supreme Court's reasoning in Graham, 560 U.S. at 69, that juvenile "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." We agree that under art. 26, "[t]here is a line 'between homicide and other serious violent offenses against the individual.'" Id., quoting Kennedy v. Louisiana, 554 U.S. 407, 438 (2008). In the absence of extraordinary circumstances, which we discuss infra, this line must not be crossed to treat a juvenile convicted of a nonmurder offense, or multiple nonmurder offenses, more harshly than a

---

[14] See G. L. c. 279, § 24, which provides in relevant part: "In the case of a sentence of life imprisonment for murder in the first degree committed by a person on or after the person's fourteenth birthday and before the person's eighteenth birthday, the court shall fix a minimum term of not less than [twenty] years nor more than [thirty] years . . . ."

juvenile convicted of murder.  The juvenile defendant's aggregate sentence fails the second prong of the disproportionality test.  We therefore need not discuss the third prong.

Based on the Cepulonis analysis, therefore, a juvenile defendant's aggregate sentence for nonmurder offenses with parole eligibility exceeding that applicable to a juvenile defendant convicted of murder is presumptively disproportionate. That presumption is conclusive, absent a hearing to consider whether extraordinary circumstances warrant a sentence treating the juvenile defendant more harshly for parole purposes than a juvenile convicted of murder.  That inquiry, ultimately whether the sentence is proportionate to the offender, as a juvenile, and to the particular offenses, must be assessed in light of the Miller factors as set forth infra.

We turn next to the details of a Miller hearing, conducted to identify any extraordinary circumstance where the presumptive disproportionality of a juvenile sentence may have been dispelled.  In addition to the factors a judge ordinarily would consider in exercising discretion in sentencing, see Commonwealth v. Costa, 472 Mass, 139, 147 (2015), the judge must weigh factors specifically related to the juvenile's age.  See Miller, 567 U.S. at 477-478 (identifying factors relevant to consideration of juvenile's age in sentencing).  Drawing from

the factors articulated in Miller, we conclude that the judge must weigh (1) the particular attributes of the juvenile, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds [the juvenile] from which he cannot usually extricate himself"; and (3) "the circumstances of the . . . offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him."  Id. at 477.  Only after the judge weighs those factors, applies them uniquely to the juvenile defendant, and considers whether a punishment exceeding that applicable to a juvenile convicted of murder (at least with respect to parole eligibility) is appropriate in the circumstances, may such a sentence be imposed.  See Diatchenko I, 466 Mass. at 668.

Contrary to the dissent's view of the sentencing hearing, the judge expressly declined to consider the juvenile defendant's age as a mitigating factor, which, as we have said, is required in the circumstances of this case.  Defense counsel went to great lengths in emphasizing the juvenile's age, his family circumstances, and the uncle's role in encouraging the juvenile's involvement in the offenses, factors that take on greater significance when, as here, a sentencing decision must be informed by a Miller hearing.  Presaging the United States Supreme Court's assessment of the attributes of youth in the

Roper line of cases, the judge accepted that "young men at the age of [seventeen] frequently do not have the maturity to make good judgments."  However, without the benefit of the United States Supreme Court's Eighth Amendment juvenile sentencing jurisprudence and our interpretation of art. 26 in Diatchenko I, the judge did not consider this as a mitigating factor.  Instead, he concluded that "the law makes them responsible for their acts as adults, nonetheless."  While the judge was correct that a juvenile defendant's age does not excuse criminal conduct, it does not appear that he gave appropriate consideration to the defendant's age as a mitigating factor in the sentencing.  Accordingly, the purpose of the Miller hearing has not been met in this case.

To be clear, we do not suggest that a juvenile convicted of nonmurder offenses may never be sentenced to consecutive terms or to a term with parole eligibility exceeding that available for a juvenile convicted of murder.  That option remains open to a sentencing judge in an appropriate case, after weighing the factors considered in the Miller hearing, and when the art. 26 requirements as articulated here are met.

3.  Right to resentencing for parole eligibility after fifteen years.  The defendant argues that his right to due process compels resentencing to conform his parole eligibility to that available to juveniles convicted of murder.  He claims

that the court's reasoning in Costa, 472 Mass. at 144, should be applied to him.  He is mistaken.  Costa was not decided on constitutional grounds, and therefore, it has no bearing on the due process claim asserted by the defendant.  Id. at 145.  On the contrary, Costa is sui generis.  Costa, a juvenile defendant, was sentenced to consecutive life sentences for murder, on the apparent assumption that the structure of his sentence was irrelevant; at the time, he was not eligible for parole at all.  Id. at 141-142.  Because of the change in the sentencing of juveniles convicted of murder brought by Diatchenko I, it simply was not possible to know if the sentencing judge would have made the same "somewhat symbolic" choice to impose consecutive sentences.  Costa, supra at 143.  For that reason only, Costa was entitled to a resentencing hearing.  The court emphatically did not hold that Costa was entitled to be resentenced to concurrent life terms to allow parole eligibility after fifteen years.  Id. at 144.  Thus, our ruling in Costa does not advance the defendant's argument that he is entitled to be resentenced to a term that permits parole eligibility on the same terms as a juvenile convicted of murder.

Conclusion.  Because the juvenile defendant's sentences are presumptively disproportionate under art. 26, and the judge imposed the sentences without the benefit of a Miller hearing, we vacate the denial of the defendant's rule 30 motion.  We

remand the case to the Superior Court for a <u>Miller</u> hearing and, if necessary, for resentencing.

<u>So ordered</u>.

LOWY, J. (dissenting, with whom Cypher, J., joins).  I disagree with the court's conclusion that the defendant's sentence violates art. 26 of the Massachusetts Declaration of Rights based on the test from Cepulonis v. Commonwealth, 384 Mass. 495 (1981).  The ultimate purpose of the three-prong test is to determine whether the punishment is "so disproportionate to the crime that it 'shocks the conscience.'"  Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 669 (2013), S.C., 471 Mass. 12 (2015), quoting Cepulonis, supra at 497.  The sentence in this case is not so disproportionate.

I would conclude that the first prong of the Cepulonis analysis, which requires consideration of the underlying crimes and the defendant's personal characteristics, is satisfied.  See Cepulonis, 384 Mass. at 497.  The judge meticulously considered both factors.  The judge noted the seriousness of the crimes and even presciently considered the factors relating to the defendant's age, competency, culpability, background, and familial influence that the United States Supreme Court, in Miller v. Alabama, 567 U.S. 460, 477-478 (2012), would subsequently mandate for juveniles in capital cases.[1]

_____

[1] The judge explicitly considered that the defendant was seventeen years old and that "young men at the age of [seventeen] frequently do not have the maturity to make good judgments."  The judge also noted the defendant's intellectual limitations, difficulty in his upbringing, and susceptibility to his uncle's influence, and a psychological report detailing his

The second prong, which requires comparing the aggregate sentence given to the defendant with sentences for more serious crimes in the Commonwealth, is also satisfied. See Cepulonis, 384 Mass. at 498. Given the number and the seriousness of the convictions, I would not conclude that the aggregate sentence in this case is out of proportion with sentences for more serious crimes. Although a defendant convicted of a single count of murder, as the court points out, would become parole-eligible before twenty-seven and one-half years had elapsed, the defendant here was convicted of, and sentenced for, multiple crimes: three counts of armed robbery, two counts of unlawful possession of a firearm, one count of armed assault with the intent to rob, one count of assault and battery by means of a dangerous weapon, and one count of discharging a firearm within 500 feet of a dwelling. Precluding a judge from entering consecutive sentences for these serious offenses, particularly when a judge had already closely considered the defendant's youth and its signature features, would unduly hamper a judge's sentencing discretion. See Commonwealth v. Lucret, 58 Mass.

---

desire to please adults. Nevertheless, the judge was within his discretion to conclude that there was "no question that [the defendant] was old enough, intelligent enough, [and] capable of knowing right from wrong" such that his "bad judgment" in committing three armed robberies could not be "excused by age or by any of the other circumstances of [the defendant's] life." As the judge stated, he looked to "the offense and to the victim of the offense, as well as to the defendant," just as the Cepulonis analysis requires.

App. Ct. 624, 628 (2003) (judicial discretion to impose concurrent or consecutive discretion is "[f]irmly rooted in common law"). That an aggregate sentence for multiple crimes may exceed the sentence for a single, more serious crime does not in itself establish an art. 26 violation for a juvenile, as the court today indicates.

Looking to the sentences in other jurisdictions, I would also conclude that the third prong is satisfied in this case. See Cepulonis, 384 Mass. at 498. States such as New Hampshire and Indiana allow for a comparable sentence for crimes similar to the defendant's most serious convictions. For example, four of the defendant's convictions -- three of armed robbery, N.H. Rev. Stat. Ann. § 636:1(III), and one of assault and battery by means of a dangerous weapon, id. at § 631:1(I)(a) -- could each result in twenty-year sentences. Id. at § 651:2(II-g). Judges in New Hampshire retain the well-established common-law discretion to impose consecutive sentences. Duquette v. Warden, N.H. State Prison, 154 N.H. 737, 743-744 (2007). Similarly, in Indiana the defendant's three convictions of armed robbery would likely qualify as two felonies at level two and one felony at level three,[2] Ind. Code § 35-42-5-1, which would carry sentences

---

[2] Indiana classifies robbery as a level two felony if there was serious bodily injury resulting to any person other than the defendant, and it classifies robbery as a level three if the robbery was committed while armed with a deadly weapon or

of between ten and thirty years, and between three and sixteen years, respectively.  <u>Id</u>. at §§ 35-50-1-2(2)(a)(12), 35-50-2-4.5, 35-50-2-5(b).  Judges in Indiana have statutory authority to impose consecutive sentences for crimes of violence, which include both level two and level three armed robbery, without limiting the duration of the consecutive sentence.  <u>Id</u>. at § 35-50-1-2(c).

For these reasons, I believe the defendant's sentence satisfies art. 26.  I respectfully dissent.

---

results in bodily injury to any person other than defendant. Ind. Code § 35-42-5-1(1)(a).