NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13496

COMMONWEALTH  vs.  YASIR Y., a juvenile.


Plymouth.     December 6, 2023. – August 5, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.


Youthful Offender Act.  Constitutional Law, Sentence.  Practice,
    Criminal, Sentence, Appellate Division, Appeal, Findings by
    judge.  Juvenile Court.  Statute, Construction.



Indictments found and returned in the Plymouth County
Division of the Juvenile Court Department on April 19, 2019.

A proceeding for revocation of probation was heard by Dana
Gershengorn, J., and a motion for resentencing, filed on
November 14, 2022, was also heard by her.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Suzanne Renaud for the juvenile.
Karen A. Palumbo, Assistant District Attorney, for the
Commonwealth.
John P. Warren, for youth advocacy division of the
Committee for Public Counsel Services & others, amici curiae,
submitted a brief.


GEORGES, J.  This case presents two questions:  first,

whether the juvenile's sentence in this case was a lawful one,

and second, whether the Appellate Division of the Superior Court (Appellate Division) was authorized to hear the appeal of the juvenile, as a youthful offender, from an adult sentence to State prison imposed by the Juvenile Court pursuant to G. L. c. 119, § 58.  We find no merit to the juvenile's contention that his sentence was unlawful.  Nonetheless, we conclude G. L. c. 278, § 28A, permits a youthful offender to appeal from his or her lawful State prison sentence to the Appellate Division.  Our conclusion reflects the intention of the Legislature, manifested in G. L. c. 119, §§ 53, 55A, 56, and 58, that this procedural safeguard should not be denied to youthful offenders when it is available to their adult criminal counterparts.  Therefore, we affirm.[1]

Background.  The juvenile, who was indicted in this case as a youthful offender, see G. L. c. 119, §§ 52, 54, tendered a plea before the Juvenile Court to charges of unarmed carjacking in violation of G. L. c. 265, § 21A, unarmed assault with intent to rob in violation of G. L. c. 265, § 20, and assault and battery on an elder or person with a disability in violation of

---

[1] We acknowledge the amicus brief submitted jointly by the youth advocacy division of the Committee for Public Counsel Services, Citizens for Juvenile Justice, and the Massachusetts Association of Criminal Defense Lawyers.

G. L. c. 265, § 13K (a 1/2).[2]

The charges stemmed from an incident when the then sixteen year old juvenile and another person escaped from a secure facility of the Department of Youth Services (DYS). After absconding, the pair approached an eighty-two year old man and his wife, who were returning to their vehicle. One or both of the escapees forced the keys from the man's hand, and one of them punched the man in his face. In his victim impact statement, the victim represented he was also kicked in the back of the knees, thrown to the ground, and held down before he was punched. The two attackers then stole his car and led State police on a high-speed chase, reaching speeds of approximately one hundred miles per hour. They crashed the car, rolling it over, and fled on foot but were apprehended by police a short distance from the vehicle.

The Juvenile Court judge accepted the juvenile's plea that he was a youthful offender as to the above charges, and in November 2019, the same judge sentenced him to two years in a house of correction on the unarmed carjacking charge, followed

---

[2] The juvenile was initially indicted for armed carjacking in violation of G. L. c. 265, § 21A, armed assault with intent to rob a victim aged sixty years or older in violation of G. L. c. 265, § 18 (a), and assault and battery on an elder or person with a disability in violation of G. L. c. 265, § 13K (a 1/2). The Commonwealth moved to reduce the first two charges in October 2019, and its motion was allowed without objection.

by five years of probation on the charge of unarmed assault with intent to rob and a concurrent five years of probation on the charge of assault and battery on an elder or person with a disability.  These were adult sentences issued pursuant to G. L. c. 119, § 58 (a).  As conditions of probation, the juvenile was ordered to stay away from and have no contact with the victim or the victim's family, to pay restitution, and to be subject to a mental health evaluation and global positioning system (GPS) monitoring.

The juvenile was released early from the house of correction on parole, and his term of probation began in April 2021.  In August 2021, a violation of probation notice issued, and in February 2022, a violation hearing was held before the same Juvenile Court judge who had sentenced the juvenile.  The judge heard testimony that the juvenile missed a probation visit.  There was also testimony that in August 2021, he was a passenger in a vehicle stopped by police, that he fled the scene, and that a stolen firearm and an illegal high capacity magazine were recovered near where he was seated in the vehicle. There was also testimony the driver told police that the bag in which the firearm was found belonged to the juvenile.

The Juvenile Court judge concluded the evidence was insufficient to establish the juvenile's unlawful possession of the firearm, but she found the juvenile had violated the

conditions of his probation by missing the probation appointment. Instead of revoking probation, the judge admonished and reprobated the juvenile.

A second violation of probation notice issued in May 2022. As grounds for the violation, it was alleged the juvenile missed three appointments with a probation officer, failed to comply with his court-ordered mental health evaluation, and was arrested for new offenses, i.e., assault and battery on a police officer, resisting arrest, interfering with a police officer, disturbing the peace, and disorderly conduct. Specifically, it was alleged the juvenile fought a police officer and then resisted arrest.[3] The juvenile stipulated that there was probable cause to find that he violated his probation on these grounds, and the same Juvenile Court judge found that probable cause existed and that the juvenile had violated his probation. On July 8, 2022, she sentenced him to from three years to three years and one day in State prison on the charges for which he previously received probation -- that is, the charges of unarmed assault with intent to rob and assault and battery on an elder or person with a disability.[4]

---

[3] The juvenile pleaded guilty to these offenses in July 2022.

[4] Three months after issuing the sentencing findings in this case, the Juvenile Court judge on her own amended the juvenile's State prison sentence on the charge of assault and battery on an

That same month, the juvenile appealed from his sentence to the Appellate Division.  He also appealed pursuant to Mass. R. A. P. 3, as appearing in 481 Mass. 1603 (2019), and filed a motion to revise and revoke the sentence pursuant to Mass. R. Crim. P. 29, as amended, 489 Mass. 1503 (2022).  The juvenile's rule 29 motion was denied on August 4, 2022, when the Juvenile Court judge issued her findings in support of sentencing.  Among numerous other considerations, the judge's decision relied on the juvenile's significant criminal history and pattern of noncompliance with conditions of release and probation, including his escape from the secure facility described above.

In November 2022, the juvenile filed another motion to revise and revoke pursuant to Mass. R. Crim. P. 29 and a motion for resentencing pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  The juvenile did not dispute the legality of the sentence or that the sentence imposed was properly within the discretion of the Juvenile Court

elder or person with a disability.  General Laws c. 265, § 13K (a 1/2), provides for a maximum State prison sentence of "not more than 3 years," and presumably for this reason, the judge concluded the juvenile's sentence of "not less than three years, not more than three years[] and one day" was incorrect as to that charge.  The Juvenile Court judge therefore reduced the sentence on that charge to a range of from two years and 364 days to three years in State prison, to be served concurrently with the existing State prison sentence on the count of unarmed assault with intent to rob.

judge. Instead, the juvenile argued his plea counsel provided ineffective assistance by not presenting certain arguments, including any challenge to the Juvenile Court judge's purported failure "to consider the effect of a [S]tate prison sentence on [the juvenile]'s well-being."

A hearing on the motions was held that December. The juvenile's appellate counsel, who represented him at this hearing, emphasized the judge "didn't specifically mention the good of [the juvenile]." The judge asked pointedly whether it was the juvenile's position that the judge needed to "specifically raise[] and/or articulate[]" considerations regarding adolescent brain development. Appellate counsel denied this, saying:

> "Your Honor, in terms of this particular case, because the issues about the [S]tate prison sentence and how it was structured and where he was going to end up and those things being knowable, those all bear on [the juvenile]'s . . . brain development and on his personal development. So as far as whether your findings generally would need to say that, I would say maybe not because in fact you referenced that you had [the juvenile] for many, many, many cases in the past. When you sentenced him back in November 2019, you referenced him. You were -- his development. You referenced his needs. So it's not as though that has been completely lost in all of this, and I would never suggest that."

Rather, appellate counsel argued plea counsel did not properly dispute "the severity of this particular sentence" and "how that would affect" the juvenile.

The Juvenile Court judge took no action on the juvenile's

motion to revise and revoke but allowed his motion for resentencing in January 2023, and later that month, a resentencing hearing was held.  At the hearing, counsel for the juvenile narrowed the issue further.  He observed that it was "clear" that the judge "took juvenile brain science and everything that usually comes through Juvenile Court into account when making the sentence."  Even so, he argued it had not been explained to the judge that the juvenile's sentence would result in his placement in a maximum security facility, which counsel contended was an inappropriate placement.  As to disposition, the juvenile sought a sentence to the house of correction.  But as the judge observed, she had already sentenced the juvenile to the house of correction in this case and had placed him on probation to see if that sentence would be "sufficient to put him on a path to rehabilitation and community safety," which she concluded it had not been.

That same day, January 30, 2023, the Juvenile Court judge resentenced the juvenile on both remaining charges to "[S]tate prison for not less than two[] and[] one-half years and not more than three years," which sentences would run concurrently.  She also issued findings in support of this sentence, relying again on the juvenile's significant criminal history, his consistent pattern of noncompliance with conditions of release and

probation, and other factors[5] to conclude he posed a risk to the community even when his age and his own needs were taken into account.  The juvenile appealed from the January 30, 2023, decision, and this appeal was consolidated with his existing appeal from the July 2022 sentence.  In September 2023, we

---

[5] In sentencing the juvenile, the judge considered the following factors:  (1) the violence of the underlying offenses; (2) the victim's impact statement; (3) the juvenile's attendance, grades, and behavior records from school, including that he failed all his classes in the most recent school year; (4) the juvenile's failure to seek consistent mental health treatment; (5) the juvenile's criminal history, including sentences for the following cases whereby the juvenile was ultimately committed to DYS:  (a) a 2018 case charging larceny from a person; (b) a 2018 case charging attempt to commit a crime and disturbing the peace; (c) a 2018 case charging disturbing the peace, resisting arrest, assault, and misdemeanor breaking and entering; and (d) a 2019 case charging reckless operation; (6) the juvenile's involvement in an assault at DYS while awaiting sentencing on the underlying offenses in this case; (7) the judge's prior imposition of a house of correction sentence in this case with probation running from and after; (8) the juvenile's prior violation of probation in this case; (9) the fact that as of July 2022, when he first received the State prison sentence for his second probation violation in this case, the juvenile had ten open charges, including firearms charges; (10) the severity of the juvenile's crimes, which had "grown in seriousness over a short period of time"; (11) the fact that the juvenile had not been in the community successfully for a significant period of time and consistently failed to comply with court-ordered conditions of release or probation; (12) the juvenile's history of removing GPS monitors and "going on the run"; (13) the risk to the community posed by the juvenile; (14) the juvenile's age at the time of the offenses and at sentencing, as well as his needs, including his needs for deterrence and rehabilitation; (15) the purposes of the Juvenile Court; and (16) the judge's conclusions that the juvenile was an inappropriate candidate for a house of correction sentence and required "a higher level of service and punishment" than a house of correction sentence could provide.

transferred the consolidated appeal to this court on our own motion.

Discussion. 1. Lawfulness of the sentence. The power to review a lawful sentence resides with the Appellate Division. See Commonwealth v. Perez, 477 Mass. 677, 682 (2017), S.C., 480 Mass. 562 (2018); Commonwealth v. McCravy, 430 Mass. 758, 767 (2000), citing G. L. c. 278, §§ 28A-28C. Our review is limited to whether the juvenile's sentence was unconstitutional or otherwise unlawful, and such questions of law are subject to de novo review.[6] See Perez, supra; McCravy, supra. See, e.g., Matter of a Motion to Compel, 492 Mass. 811, 815 (2023).

On appeal, the juvenile argues the judge (1) focused impermissibly on punishment in violation of G. L. c. 119, § 53; (2) disregarded that her sentence would result in the juvenile's commitment to a maximum security State prison; (3) failed to provide sufficient rationale for the sentence, which the juvenile argues was an upward departure from the Advisory Sentencing Guidelines issued in November 2017 by the Massachusetts Sentencing Commission; (4) referred to parole in her decision as a "service" of the house of correction; (5) did

---

[6] The juvenile has no grounds to appeal from the ruling on his motion brought pursuant to Mass. R. Crim. P. 30 (b), as that motion, which sought resentencing, was allowed. The allowance of that motion prompted the resentencing decision now on appeal.

not "directly address in her written findings the impact of the recent literature" regarding juvenile brain development on the particular juvenile before her; (6) erroneously concluded that the juvenile's offenses had "grown in seriousness"; and (7) erroneously relied on open charges related to the possession of a firearm, which charges she previously found were insufficient to establish a violation of probation in this case.[7]

The common thread running through these alleged errors is the juvenile's contention that his sentence to State prison was unlawful because it violated G. L. c. 119, § 53, and the principles expressed therein insofar as it did not take his particular circumstances into account. Section 53 sets forth the Legislature's directive that

> "[§§ 52 to 63], inclusive, shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance. Proceedings against children under said sections shall not be deemed criminal proceedings."

---

[7] However, the juvenile's motion for resentencing, brought pursuant to Mass. R. Crim. P. 30 (b), stated the following with regard to the earlier sentence before it was reduced on January 30: "To be sure, the Court could decide in her discretion, when provided with accurate foundational information, that it might be in the 'long-term public safety' [sic] that [the juvenile] receive a sentence to [S]tate prison -- and that the prison sentence have a maximum term of three years."

G. L. c. 119, § 53.

But as its plain language conveys, § 53 must be read alongside and inform our reading of G. L. c. 119, § 58, which more specifically provides for the sentencing of youthful offenders. See Commonwealth v. Connor C., 432 Mass. 635, 640-642 (2000). The youthful offender sentencing provisions of § 58 were enacted in 1996 as part of the youthful offender act, St. 1996, c. 200, § 5, the purpose of which was "to reduce or to eliminate certain protections previously available to all juvenile offenders in an effort to address growing concern about violent crimes committed by juveniles" (citation omitted). Connor C., supra at 641. See Doe v. Attorney Gen. (No. 1), 425 Mass. 210, 213 n.8 (1997). In service of that purpose, § 58 permits a Juvenile Court judge to sentence a youthful offender as "provided by law," i.e., to impose an adult sentence, including a sentence to State prison. G. L. c. 119, § 58 (a). See Doe, supra. While § 53 informs our interpretation of § 58, it does not of its own force render unlawful a sentence authorized by § 58. See Connor C., supra at 642. The juvenile's sentence complies with § 58, as his counsel acknowledged during oral argument, and his sentence was lawful.

Contrary to the juvenile's position, the judge did not focus unduly on punishment. Rather, the sentence effected the purposes of the youthful offender provisions in § 58. See

Connor C., 432 Mass. at 641.  At the resentencing hearing, the juvenile requested a sentence to the house of correction, but as the judge explained, she had already sentenced the juvenile to the house of correction, and his subsequent violations of probation showed that sentence was insufficient to correct the juvenile's behavior or to protect the public.  See G. L. c. 119, § 58, fourth par. (sentencing hearing for youthful offender is "to determine the sentence by which the present and long-term public safety would be best protected").  The juvenile received a house of correction sentence and probation for his participation in a violent crime, and after his first violation of probation, he received only an admonishment and reprobation. It was not until he was charged with another crime of violence during his term of probation that he was sentenced to State prison.

The juvenile nevertheless argues his placement in a maximum security facility rendered his sentence unlawful.  But the Juvenile Court judge did not specifically sentence the juvenile to placement in a maximum security facility.[8]  Rather, she only

---

[8] The Legislature has committed the authority to determine an inmate's placement in a particular facility to the Department of Correction.  See G. L. c. 124, § 1 (g); G. L. c. 127, § 97; Hastings v. Commissioner of Correction, 424 Mass. 46, 49-50 (1997).  The juvenile acknowledges that his placement at a maximum security facility was made by the Department of Correction based on his prior delinquency adjudications, his

sentenced him to the State prison as specifically authorized by § 58.

Moreover, in relying on the reasons described above, the judge's sentencing decision of January 30, 2023, provided ample support for the judge's conclusions.[9]  Her references to parole and related supervision as a "service[]" of the house of correction did not render the sentence unlawful; the judge's point, plainly made, was the juvenile had already received the sentence he now sought, a house of correction sentence with the availability of parole.  Even so, she concluded the juvenile's continuing course of conduct showed the earlier sentence had failed to achieve its purpose.  This consideration was proper and did not render the sentence unlawful, as § 58 required the judge to consider "the success or lack of success of any past . . . delinquency dispositions regarding the youthful offender."

By contrast, the statute did not require the judge to make specific written findings as to the effect of recent literature regarding research on juvenile brain development on the

---

escape from a secure DYS facility, his age, and the severity of his offense.

[9] The juvenile correctly concedes that the Advisory Sentencing Guidelines were not binding on the judge.  See Commonwealth v. Rossetti, 489 Mass. 589, 594 n.7 (2022).  For this reason, the judge was not required to justify her sentence on the basis that it departed from the guidelines.

sentencing of the juvenile. See G. L. c. 119, § 58. During the hearing on the juvenile's rule 30 (b) motion, counsel for the juvenile disclaimed argument to the contrary, and at the January 30, 2023, resentencing hearing, separate counsel for the juvenile acknowledged the judge "made it clear that [she] took juvenile brain science . . . into account when making the [earlier] sentence." Here, any lack of written findings specific to the impact of recent literature regarding brain development did not render the juvenile's sentence unlawful.

The juvenile's contention that the judge erred by finding his offenses had "grown in seriousness" over time relies on a characterization of facts that minimizes the seriousness of his assault and battery of a police officer. Specifically, the juvenile assumes "it would be impossible" to characterize this conduct -- which he stipulated was a violation of his probation and to which he pleaded guilty in the separate criminal case arising from that incident -- as more serious than his prior offenses, where the juvenile claims the assault and battery on a police officer "reflected [his] errors in judgment and [involved] offensive contact and potentially reckless behavior, but not any particular tendency for physically injurious violence."

Faced with this same argument, the Juvenile Court judge disagreed with this characterization. And even assuming the

juvenile's earlier unprovoked attack on an elderly man was the more serious incident, the Juvenile Court judge could have appropriately viewed the juvenile's later physical attack of a police officer as a further disrespect for the law. Indeed, the detailed findings of the sentencing judge broadly laid out an escalating pattern of lawless conduct, beginning with disruptive behavior at school and running through the juvenile's larceny from a person to his refusal to comply with conditions of release and the violent incidents described above.

Perhaps the weightiest of the juvenile's arguments is his contention the judge improperly considered the juvenile's open charge relating to the possession of a firearm, which the judge previously found did not amount to a violation of probation. But even if she did not deem him to possess the firearm, the judge was permitted to consider the circumstances of the underlying incident, such as his traveling in a car where a stolen firearm was recovered and his flight from police. See Perez, 477 Mass. at 686; Commonwealth v. Doucette, 81 Mass. App. Ct. 740, 744-745 (2012). In these circumstances, and particularly in light of the detailed findings otherwise justifying the juvenile's State prison sentence, we conclude the juvenile's sentence was lawful, and we affirm the Juvenile Court judge's January 30, 2023, sentence.

2. Authority of the Appellate Division. We must also

determine whether the Appellate Division is authorized to hear the appeal of a youthful offender from a State prison sentence imposed by the Juvenile Court. "Because this is a question of statutory interpretation, the standard of review is de novo." Matter of an Impounded Case (No. 2), 493 Mass. 470, 472 (2024). The parties agree that some form of sentencing review is appropriate, and the record in this case reflects that, to date, the Appellate Division has been hearing these appeals. To determine the scope of its authority in this regard, however, we must discern the interaction between G. L. c. 278, § 28A, and G. L. c. 119, §§ 53, 55A, 56, and 58.

In conducting our review, we must interpret these statutes "according to the intent of the Legislature ascertained from all [their] words construed by the ordinary and approved usage of the language, considered in connection with the cause[s] of [their] enactment[s], the mischief[s] or imperfection[s] to be remedied and the main object[s] to be accomplished, to the end that the purpose[s] of [their] framers may be effectuated" (citation omitted). Commonwealth v. Fleury, 489 Mass. 421, 424 (2022). Statutes like these, which "relate to a common subject matter[,] should be construed together so as to constitute an harmonious whole" (quotation and citation omitted). Commonwealth v. Alfonso, 449 Mass. 738, 744 (2007). And "our respect for the Legislature's considered judgment dictates that

we interpret the statute[s] to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation" (citation omitted). Matter of an Impounded Case, 493 Mass. at 473.

a. General Laws c. 278, § 28A. We first look to G. L. c. 278, § 28A, the statute creating the Appellate Division of the Superior Court, which provides in relevant part:

> "There shall be an [A]ppellate [D]ivision of the [S]uperior [C]ourt for the review of sentences to the [S]tate prison imposed by final judgments in criminal cases, except in any case in which a different sentence could not have been imposed, and for the review of sentences to the reformatory for women for terms of more than five years imposed by final judgments in such criminal cases. Said [A]ppellate [D]ivision shall consist of three justices of the [S]uperior [C]ourt to be designated from time to time by the chief justice of said court . . . ."

Created by statute in 1943, the Appellate Division "was conceived as a vehicle whereby extreme harshness or leniency by judges in sentencing could be corrected." Walsh v. Commonwealth, 358 Mass. 193, 195 (1970). The Appellate Division acts at the request of a defendant, id. at 198, and its jurisdiction is "limited to a review of the sentence imposed," which it may reduce, increase, or affirm, Croteau, petitioner, 353 Mass. 736, 737 (1968), citing G. L. c. 278, § 28B. An appeal to the Appellate Division "is not a substitute for any appeal which a defendant may be entitled to take [to the Appeals Court or] to the Supreme Judicial Court. [The defendant] may

pursue either or both types of appeal after being convicted and sentenced." Walsh, supra at 195. Most importantly, the Appellate Division is the only judicial body permitted to review a lawful sentence. See Perez, 477 Mass. at 682; McCravy, 430 Mass. at 767.

Section 28A expressly authorizes the Appellate Division to review "sentences to the [S]tate prison imposed by final judgments," which would encompass the juvenile's sentence. G. L. c. 278, § 28A. Nevertheless, this mechanism of review is for sentences "in criminal cases," id., and youthful offender proceedings are not criminal cases, Commonwealth v. Anderson, 461 Mass. 616, 630, cert. denied, 568 U.S. 946 (2012). Moreover, the statute provides that the Appellate Division lies within the Superior Court, though the sentence at issue was imposed by the Juvenile Court. See G. L. c. 278, § 28A. These latter considerations suggest § 28A does not permit the juvenile to appeal from his sentence. Even so, § 28A was last amended in 1978, long before the 1996 amendments to § 58 which permitted the Juvenile Court to sentence youthful offenders to State prison. See St. 1978, c. 478, § 306.

This court had occasion to interpret § 28A in Starks v. Commonwealth, 471 Mass. 1014, 1015 (2015). There, we considered an equal protection challenge to § 28A based on the statutory language permitting appeals "for the review of sentences to the

reformatory for women."  G. L. c. 278, § 28A.  See Starks, supra at 1014.  But by that time, sentencing reform legislation had abolished sentences to the reformatory for women.  See Starks, supra at 1014-1015; Alfonso, 449 Mass. at 744.  In construing § 28A, we said, "Whether a sentence is presently appealable to the Appellate Division . . . turns on whether the sentence is a felony sentence to the State prison . . . ."  Starks, supra at 1015.  See Alfonso, supra at 745-746.  Even though youthful offender sentences were not at issue in Starks, we believe this construction best addresses the issue because it effects the legislative intention embodied in the statutes governing youthful offender proceedings.  Specifically, it is supported by an analysis of G. L. c. 119, §§ 53, 55A, 56, and 58.

b.  General Laws c. 119, §§ 53, 55A, 56, and 58.  As described supra, § 58 permits a Juvenile Court judge to impose an adult sentence in a youthful offender proceeding, including a sentence to State prison.  See G. L. c. 119, § 58 (a); Doe, 425 Mass. at 213 n.8.  And although § 58 does not expressly provide for appeals, G. L. c. 119, §§ 55A and 56 (g), provide that, as to trials in the Juvenile Court, review "may be had directly by the [A]ppeals [C]ourt, by appeal, report or otherwise in the same manner provided for trials of criminal cases in the [S]uperior [C]ourt."  For its part, § 53 expressly commands that §§ 55A, 56, and 58

"shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance."

G. L. c. 119, § 53.  See G. L. c. 119, § 1.

Thus, the provisions of the 1996 amendments, which include the youthful offender sentencing provisions of § 58, "did not eviscerate the longstanding principle that the treatment of children who offend our laws are not criminal proceedings." Matter of an Impounded Case, 493 Mass. at 475, quoting Connor C., 432 Mass. at 641.  On the contrary, the Legislature "still required youthful offenders to be tried in the Juvenile Court (or a juvenile session of a District Court) and did not exclude them from the dictates of § 53."  Anderson, 461 Mass. at 630. As this court previously explained:

"G[eneral] L[aws] c. 119, § 53, continues to instruct us to construe liberally the new provisions contained in §§ 54 and 58 in favor of treating children as offenders in need of aid, encouragement, and guidance, not as criminals.  But the statutory mandate that we do so 'as far as practicable' takes on new significance in light of the 1996 amendments that some children who violate some laws should, at the discretion of a judge in a juvenile proceeding, be subject to the same prison sentences provided by law as if they were adults.  G. L. c. 119, § 58."

Connor C., supra at 642.

Read together, these provisions evince a clear intention to afford youthful offenders an important procedural protection in the review of a lawful State prison sentence, over which only

the Appellate Division has jurisdiction.  See Perez, 477 Mass. at 682; McCravy, 430 Mass. at 767.  The Legislature has provided for appeals in youthful offender cases in the same manner as adult criminal cases, and its sentencing scheme for youthful offenders expressly permits the imposition of adult sentences to the State prison.  Construing these provisions liberally informs our conclusion that the Legislature intended for youthful offenders to seek review of State prison sentences in the same manner as adult criminal defendants from the only judicial body authorized to hear these appeals.

To interpret the statutes otherwise would unfairly deny youthful offenders sentenced to State prison an important procedural protection freely available to their adult criminal counterparts.  This would necessarily be an absurd result, given the Legislature's intentions described above, and further given this court's consistent acknowledgment that "children are constitutionally different from adults for purposes of sentencing" insofar as they "are less deserving of the most severe punishments" (citations omitted).  Commonwealth v. Ulani U., 487 Mass. 203, 208 (2021).  As to youthful offenders, § 58 affords the Juvenile Court "wide latitude in fashioning a sentence" (citation omitted).  Commonwealth v. Dones, 492 Mass. 291, 296-297 (2023).  Consequently, youthful offenders sentenced to State prison are in particular need of the precise relief for

which the Appellate Division was designed:  the correction of "extreme harshness or leniency by judges in sentencing."  Walsh, 358 Mass. at 195.

For all these reasons, we reject an interpretation of the relevant statutes that would unreasonably deny a review of a youthful offender's State prison sentence by the Appellate Division.  "We therefore have no difficulty in finding a clear legislative intention to afford juveniles" who appeal from State prison sentences "at least the same fundamental safeguards afforded to adults similarly situated."  Commonwealth v. Thomas, 359 Mass. 386, 387 (1971).  See Connaughton v. District Court of Chelsea, 371 Mass. 301, 302 (1976).  We hold that G. L. c. 278, § 28A, permits youthful offenders to appeal from lawful State prison sentences to the Appellate Division.

Conclusion.  For the foregoing reasons, we conclude that the juvenile's sentence is lawful and therefore affirm the January 30, 2023, order resentencing the juvenile.  We further conclude that the juvenile may appeal from a lawful State prison sentence to the Appellate Division.

So ordered.